Daniel, J.
In the view which I take of this case, it does not seem to me necessary to enquire whether the city of Wheeling, in grading the street and constructing the culvert in the proceedings mentioned, did or did not act in pursuance of a lawful authority. There is nothing in the evidence, upon which the instructions of the Circuit court are founded, to show that these works had caused any obstruction to the course of the branch in its passage over the lot of the plaintiff, or had in any manner become, or were likely to become, the cause of injury to his property, till the flow of the water through the culvert was stopped by the defendant. And indeed the instructions of the Circuit court proceed on the hypothesis that the works of the defendant on his own lot were the proximate cause of the overflow of the plaintiff’s; and declare to the jury that the defendant had a right to fill up his lot, notwithstanding such filling may have stopped the flow of water through the culvert and caused the same to overflow the property of the plaintiff; provided the jury should believe that the course of the drain was changed by the works of the city above mentioned, so as to cause the water to flow over a different part of his lot from the place where it had always been accustomed to flow; and that the city had no authority so to grade an alley as to throw the water of such a drain on the property of a citizen without compensation and thereby to deprive him of the right to exercise any authority as owner which he previously had over his own property.
In Angelí on Water Courses, § SS9, it is said that a party aggrieved may remove a private nuisance if it can be peaceably done. Thus, if a ditch is dug, by means of which the water is diverted from the land of a riparian proprietor, through whose land it would otherwise flow in its natural course, he may go upon *567 the land of the wrong doer and fill it up. So the law affords the owner of land protection against the flow of back water on his land or upon his mill; and he may lawfully enter upon the land of the person causing the injury, and remove the obstruction by which it was occasioned. And in the same treatise, § 332, it is declared that a riparian proprietor, whose lands are directly inundated by the acts of his neighbor, can not only by the common law recover adequate damages, but he is allowed by the same authority to defend his land against encroachments; and if any consequences detrimental to the wrong doer result from this course, they afford no legal ground of complaint. The same doctrine is asserted in Hilliard on Real Property, vol. 2, p. 120, where it is said that if the land of one person is overflowed through the act of another, the former may erect any obstruction which may be necessary to keep off the water, and will not be answerable for damages thereby occasioned to the wrong doer. But the important qualification is added, that “ he cannot laufully cause damage to third persons by such erection.”
In looking to the cases cited in the foregoing passages in support of the proposition therein asserted, it will bo seen, I think, that, whilst the right of a party aggrieved to protect his property from the injurious consequences of works unlawfully erected, by the abatement of such works, is well established, the circumstances which justify a resort to counter works which must result in damage to the property of the wrong doer, are bjr no means very clearly defined. Be this, however, as it may, I have been unable to find any precedent which would justify a party, in a case like this, where the evidence affords the presumption that there was ample time to resort to other means of protection, in placing such obstructions to the flow of the water as would inevitably cause the overflow of *568 the lands of a third person. And justice and fair dealing would seem to require of a person who, under such circumstances chooses, instead of resorting to the legal tribunal, to take his redress or protection into his own hands, the caution, that his proceedings do not involve the ruin or injury oí third parties. It seems to me that the cases which deny to the original wrong doer the right to recover for damáges done to his property by countervailing works, have gone full far enough in vindicating the right of self-protection; as under their sanction slight wrongs may, in some cases, be redressed by very serious injuries. A just deference to the rights of unoffending third parties and a proper regard for the peace and order of society, forbid a further extension of the doctrine. Under the instructions of the Circuit court, a person whose property is injured in any degree, however slight, by the unauthorized diversion of a stream from its accustomed flow, may justify the erection of any work necessary to the complete protection and full enjoyment of his property, though the necessary consequence is not merely to endanger but to visit with certain destruction the property of a neighbor, however valuable; and he may thus, in order to prevent or repair a loss, or obviate even an inconvenience, however trifling, carry ruin to the fortunes of innocent parties, and then refer them for redress to the remote, and perhaps insolvent wrong doer.
In the absence of authority plainly so declaring the law, I cannot give my assent to a doctrine which may work out such unjust results.
On the contrary, justice and convenience seem to me to require, in such cases, that an aggrieved party should not be compelled, in seeking redress, to look beyond the person whose acts are the proximate cause of the injury done to his property. When he shows that but for the act complained of he would have *569 sustained no injury, he establishes a right to have redress at the hands of the person who did it. No sufficient answer to the complaint is made by the plea that such act was done by the defendant to repair an injury to his own property, proceeding from the illegal acts of a third person.
The cases in which parties have been held excused for acts done injurious to the property of others, under circumstances of imminent danger expected from fire or flood, furnish, I think, no rule or argument in support of the instructions of the Circuit court. In such cases of accidental and extraordinary casualty, where the law is powerless to afford either protection or redress, each person exposed to the danger is left to adopt the best means within his power to avert the threatened mischief; and if consequences prejudicial to the property of others ensue, the defense and excuse are found in the pressing emergency of the occasion. The difference between such cases and those where the parties have it in their power to appeal to the preventive and remedial justice of the court; and have also time and opportunity afforded to select the means of preventing or repairing the mischief without damage to others, is so obvious as to need no comment. And it is also to be observed, that even in cases of the threatened outburst of a flood or spread of a conflagration, the right of a person to protect his property cannot be exercised in total disregard of the rights of others. He must still, in the selection of the means of protection within his power, use care to prevent unnecessary injury to the property of others. Noyes v. Shepherd, 30 Maine R. 173, 179; Beach v. Trudgain, 2 Graft. 219.
In the first mentioned case, where the defendant was sued for damages resulting from the use of means employed to prevent an expected inundation from the waters of a pond which threatened to do great injury *570 to the property of the defendant and others, he was held to show that he had observed ordinary care in his proceedings: And in the case of Beach v. Trudgain, in which parties, pulling down a house in a town to arrest the spread of a fire, were sued by the owner, this court held that they were responsible for the damages thereby sustained by the owner, if-the house might have been prevented taking fire by the use of the means within the power of the parties pulling it down.
If any analogy favorable to the defense could be drawn from the indulgence extended to parties acting under the pressure of imminent danger, (and I have already expressed the opinion that the analogy does not hold,) I should still be of the opinion that the rule declared by the Circuit court was too broad, inasmuch as it asserts the unqualified right of the defendant to use his property, under the state of things disclosed in the proofs, to the prejudice of his neighbor, without any reference to the consideration whether he might not have prevented damage as well to his own property as to that of the plaintiff, by the use of other means.
Before a party, in a case of the kind under consideration, should be allowed to repair an injury or indemnify himself against a loss by the employment of means, of which mischief to the property of third persons is the natural and inevitable result, he should be at least required to show that he could not have prevented the damage by the use of means involving no greater trouble or expense than that encountered in the use of those selected. And in this case, whilst the ordinary- remedies recognized by the law were open to the 'defendant, (which differs his case from those just commented on,) there is an absence of any proof to show that he might not have restored the stream to its original channel, or, whilst filling up his *571 lot, might not have provided a passage for the water, so as to prevent the overflow of the plaintiff’s land, without any further outlay of money or use of labor than that employed, and without being curtailed in any manner of an equally full and convenient enjoyment of his own lot.
The evidence, that the plaintiff was the street commissioner of the city of Wheeling, superintending and directing the work at the time of the grading of the alley and the construction of the culvert, seems to me to make no difference in the case. At that time, (the bill of exceptions states,) neither the defendant nor the plaintiff had purchased their lots. No portion of the culvert was upon the plaintiff’s lot; and his entire connection with it ceased before the defendant became the owner of his lot. The plaintiff, after the culvert was completed, had no control or power over it. Its continuance was not in virtue of any permission, license' or grant from him. It was wholly the property of the city, by whose order it was built, before the defendant or the plaintiff had acquired any rights of property to be affected by it; and its continuance thereafter, by which alone the defendant could have been injured, was by the authority of the city alone. This evidence of the plaintiff’s connection with the works of the city does not seem to have formed in any degree the basis of the instructions given to the jury; and I am of opinion that it does not relieve them of the objections which I have pointed out.
I am of opinion to reverse, and remand the cause for a new trial.
The other judges concurred.
The judgment was as follows :
It seems to the court, that whether the city of *572 Wheeling had or had not lawful authority to grade the alley or construct the sewer in the bill of exceptions mentioned, so as to cause the water which had hitherto flowed over a part of the lot of the defendant to flow over another part of said lot, to the injury of the defendant, the defendant had no legal right to obstruct the flow of water through said sewer so as thereby to cause the water to be dammed and thrown back on the property of the plaintiff, to his injury: And consequently, that the Circuit court erred in giving the instructions in said bill of exceptions mentioned. It is therefore considered, &c. that the judgment be reversed, &c. with costs, verdict' set aside, and cause remanded for new trial; on which the Circuit court will not repeat such instructions, if asked.