JOHN PHINIZY, plaintiff in error *vs.* THE CITY COUNCIL OF AUGUSTA, defendant in error.

[The following head-notes are by McCAY and MONTGOMERY, Judges. How far the principles there enunciated differ from the views of WARNER, Chief Justice, will be seen by reference to the opinions.]

Any incorporeal rights which may lawfully be granted, as to the right to divert water from, or the right to flow water upon, the land of another, may be acquired by prescription, to-wit: by the uninterrupted use and enjoyment thereof for twenty years.

The owner of land through which there flows a stream of water may not divert the same so as to interfere with the enjoyment thereof by the land owners upon the stream above and below. But this rule does not apply to the water falling upon land as by rain or snow, and a municipal corporation is not liable to an action for damages, because by its streets, roofs and drains, it causes the water from rains and other water produced upon its surface, to flow upon adjoining lands which are the natural outlets of such water, even though such water is, by these means, concentrated into a stream and would, otherwise, have flowed over said land in many small streams.

If a municipal corporation introduce, within its boundaries, water for manufacturing purposes, and by turning said water into its drains increase the water flowing into adjoining lands to the damage of the same, an action will lie for the damages against the corporation, and this is true, even if the increased water thus cast upon the adjoining land is emptied thereon to prevent the said canal from overflowing its banks, or by reason of the actual overflow of said banks, provided the adjoining lands would not have been overflowed without said canal

The measure of damages for any illegal overflow of lands is the actual damages coming to the land by such illegal overflow.

Trespass. Municipal corporation. Drainage. Charge of Court. Before Judge GIBSON. Richmond Superior Court. January Term, 1872.

John Phinizy brought case aginst the City Council of Augusta, alleging in his declaration substantially the following

Phinizy vs. The City Council of Augusta.

facts : That he has been for fifteen years the owner of a certain tract of land in the county of Richmond, lying southeast from the city of Augusta; that defendant has so constructed the drains leading from said city, that almost all the water passes upon his land, and so covers it as to render it comparatively of but little value; that said conduct of defendant commenced many years ago, but since January 1st, 1861, has been gradually growing worse and worse as the city increases in size and population; that he has repeatedly notified defendant of the nuisance to which he was subjected, and has received verbal promises of redress which have never been complied with; that defendant owns the Augusta Canal, leading from Bull Sluice, in said county, on the Savannah river, to the city of Augusta, in which said city there are three levels of said canal, the first two being used for manufacturing purposes, and the third as a waste way to return the water from the other levels to the Savannah river; that on said third level there is constructed a flood gate on Marbury street where it crosses said street, intended to be closed when the water in the Savannah river is so high as to back up and fill said third level, thereby preventing an overflow in such portions of the city as said third level passes through; that during such high water as renders it necessary to close said gate, the mills and manufacturers on the second level of said canal are prevented from running by reason of want of outlet for their waste water, and said defendant has caused to be constructed at the eastern end of said third level a gate whereby the water is discharged across Twiggs street, through the ditches used for the drainage of the city; that plaintiff's land has been subjected to many and repeated overflows by reason of said discharge of water from said canal for the past nine years, and has thereby rendered it almost valueless for cultivation, causing it to become yearly of less value; that in July, 1869, said defendant caused to be deepened and enlarged through the lands of the estate of Charles Delaigle, which alone separated the property of plaintiff from the city of Augusta, and nearly to the line of plaintiff's land, the principal sewers and drains of said city whereby

the volume of water distributed and discharged upon plaintiff's land, has been greatly increased, cultivation of the soil impeded, and ingress and egress almost stopped during the winter season, of all of which defendant has had notice; that said defendant, for the benefit of said city, for the past nine years, has been turning all the water from said city towards the land of plaintiff; prays that process may issue, etc.

The defendant pleaded: 1st. The general issue.  2d. That the several supposed causes of action did not accrue within four years next before the commencement of said action.  3d. That the overflow of plaintiff's land is caused by the natural configuration of the land adjoining and near to plaintiff's property, and by the natural water shed of the adjoining and adjacent lands, and not through the agency, direct or indirect, of artificial or unnatural disturbance of said natural water shed or drainage.

The evidence is unnecessary to an understanding of the decision of the Court, and is, therefore, omitted.

The jury returned a verdict in favor of the defendant. The plaintiff moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict was contrary to law, and strongly and decidedly against the weight of the evidence.

2d. Because the verdict was contrary to the charge of the Court, "that the plaintiff is entitled to recover unless the defendant can show the right to overflow existing by grant or prescription."

3d. Because the Court refused to charge the jury as requested by plaintiff's attorney, "that the right to overflow is such an interest as must be created in writing, and defendant must show its existence, to relieve it from liability, if any damage has been sustained."

4th. Because the Court refused to charge the jury as requested by plaintiff's attorney, "that the overflow of land, for the purpose of relieving the drains and sewers of a municipal corporation, is taking of private property for public uses, and compensation must be paid therefor."

5th. Because the Court refused to charge the jury as requested by plaintiff's attorney, "that if it appear that the natural flow of water falling on the land occupied by the city of Augusta, is towards and upon the plaintiff's land, the building of a large city and the construction of drains therefrom, whereby large quantities of water, more than of nature, are thrown upon the plaintiff's land, it is taking of an easement for which compensation must be paid."

6th. Because the jury found contrary to the charge of the Court, "that if the defendant is the owner of a canal for manufacturing purposes, it is bound to manage and control the same, so as not to injure the property of others, and it has no right to use the drains of the city and thereby discharge upon the property of private citizens a greater volume of water than would have occurred in the natural course of events."

7th. Because the Court charged the jury, "that if the plaintiff purchased any land liable to overflow from the drains of the city of Augusta, it was his misfortune, and he could not recover, as a man must purchase land subject to any overflow, from any natural cause, at his own risk."

8th. Because the Court charged the jury, "that it was the duty of every municipal corporation to keep open its drains and sewers, and that if damage ensued from the flowing of water therefrom, in its natural course, the defendant was not liable."

9th. Because the Court charged the jury, "that if the defendant caused any damage by turning off the water of the Augusta Canal through the drains of the city, it was responsible therefor, but that it was not liable for any damage caused by overflowing the banks, or for discharging the water to avoid overflow."

10th. Because the Court charged the jury, "that plaintiff was not entitled to recover for damage incurred at any time prior to four years before suit was commenced."

The motion for a new trial was overruled by the Court, and plaintiff excepted and assigns said ruling as error.

Frank H. Miller, for plaintiff in error.

1st. A person has no right to turn water from his own land on the land of another: Adams *vs.* Walker, 34 Conn., 466.

2d. The right to overflow must exist by prescription or grant: 4 McCord, 96; Crabb, R. P., 251.

3d. It is such an interest in land as must be created in writing under the statute of frauds: 4 John, 81; 29 Georgia, 254; 3 Georgia, 83; Code, 1940; 12 Georgia, 242; Cook *vs.* Duer, decided March 5, 1872.

4th. A municipal corporation has no greater power than natural persons, except through the exercise of the right of eminent domain and payment of just compensation: 25 Wisconsin, 223; 41 Illinois, 502; 30 Georgia, 154. And this right of eminent domain can only exist as to land within the corporate limits.

5th. As to any property owned by the city they are responsible for damages caused by want of care: 2 Denio, 445.; Mayor, etc., *vs.* Bailey; Barrow *vs.* Mayor, etc., of Baltimore; 2 American Jurisprudence, 203; 10 Ohio, 159.

A. R. Wright, for defendant.

1st. Where there has been a verdict of the jury upon the merits of the issue between the parties, and the Judge refuses a new trial, this Court will not disturb the verdict if there be any evidence to sustain it: 38 Georgia, 129.; 39 Georgia, 68, 119, 223, 359; 40 Georgia, 115; 41 Georgia, 63, 94, 125, 215; 42 Georgia, 146, 163.

2d. Where the verdict is right in itself, a new trial will not be granted on the ground of misdirection by the Judge: 6 Georgia, 324; 10 Georgia, 429; 14 Georgia, 55; 15 Georgia, 155; 17. Georgia, 267, 435; 22 Georgia, 237; 33 Georgia, 173, 207; 37 Georgia, 456, 195, 94; 30 Georgia, 485, 857; 42 Georgia, 244, 306; 609; 41 Georgia, 186, 507, 675; 40 Georgia, 423.

3d. An easement in the soil of another may be acquired by prescription, by twenty years' adverse and uninterrupted enjoyment: Melvin *vs.* Whiting, 13 Pick, 184; Hazzard *vs.*

Robinson, 3 Mason, 272; Goringen & Summers, 2 Iredell, 229. See also Pool & Lufburrow *vs.* Lewis, 41 Georgia, 162.

4th. All actions for damages to realty shall be brought within four years after the right of action accrues: Code, section 3003.

WARNER, Chief Justice.

This was an action brought by the plaintiff against the defendants to recover damages for causing water to be thrown upon the plaintiff's land by the construction of their drains and sewers from the city of Augusta, for the benefit of the city. On the trial of the case, the jury found a verdict for the defendants. A motion was made for a new trial, on the several grounds of error set forth in the record, which was overruled and the plaintiff excepted. The Court charged the jury, in addition to other charges given to them, " that if the plaintiff purchased any land liable to overflow from the drains of the city of Augusta, it was his misfortune, and he could not recover, as a man must purchase land subject to overflow, from any natural cause, at his own risk." This charge of the Court, in view of the facts of the case, was error, in my judgment. Whilst it may be true, as a general rule, that if a man purchases land subject to overflow from natural causes, he purchases it at his own risk, still, that general rule was not applicable to the facts of this case. The plaintiff's land was below the city, and if it was overflowed by water which naturally accumulated by the rains which fell upon the city and the surrounding more elevated land, and naturally run down towards and upon the plaintiff's land, over other land between the city and the plaintiff's land, as the God of nature made it to run, then the plaintiff could not recover; but that is not the case made by the evidence in the record. The water which falls upon the city by natural rains, as well as that which had been introduced into the city for manufacturing and other purposes, is concentrated into drains and sewers, constructed by the defendants for the benefit of the city, and is thus precipitated upon the plaintiff's land. The water which flows from the

city towards the plaintiff's land is not permitted to flow over the other land between the city and his land in its *natural course*, so as to allow any portion of it to be absorbed in its transit, but it is concentrated and confined to the drains and sewers constructed by the defendants for the benefit of the city. This charge of the Court assumes that the overflow of the plaintiff's land, from the drains constructed by the city for its own benefit, was an overflow of his land from a *natural cause*, whereas, the overflowing of the plaintiff's land by the construction of the defendants' drains was caused by artificial means, created by the defendants for their own benefit. If, by the construction of such drains and sewers to carry off the water which naturally falls upon the city, and the water which has been introduced into the city by means of the canal, a greater volume or quantity of water is thus thrown upon the plaintiff's land than otherwise would be there but for the construction of the defendants' drains and sewers, then the defendants are liable to the plaintiff for whatever damages he may have sustained thereby, although the water may run in its natural course in *the drains and sewers* so constructed by the defendants. If, by the introduction of an increased quantity of water into the city by means of the canal, when added to the natural fall of water thereon, the drains and sewers constructed by the defendants to carry off such water cause a greater quantity of water to be thrown on to the plaintiff's land than would otherwise be there, it is a nuisance, for which he may maintain his action for damages.

A nuisance, as defined by the law, is anything that worketh hurt, inconvenience or damage to another, and the fact that the act done may otherwise be lawful does not keep it from being a nuisance: Code, 2949. The alienee of the person owning the property injured may sue for a continuance of the nuisance: Code, 2950. As was said by Lumpkin, Judge, in *Bonner vs. Wellborn*, 7 *Georgia Reports*, 327, " so jealous and guarded have been the Courts relative to this matter, that they have steadily ruled that a person never can, by *prescription* or *otherwise*, acquire a right to maintain a nuisance." The prin-

ciple of the law applicable to such cases is, that a continuance of the nuisance constitutes a new cause of action, from day to day, so long as the nuisance continues to exist, in favor of the party injured thereby.

The Court also charged the jury, "that it was the duty of every municipal corporation to keep open its drains and sewers, and that if damage ensued from the flowing of water therefrom in its natural. course, the defendants were not liable." This charge of the Court, as applicable to the facts of the case, was, in my judgment, error. The latter part of it *ignores* the real question in issue between the parties, to-wit : Whether the defendants, by the construction of their drains and sewers to carry off the water from the city, had thrown a greater quantity of water upon the plaintiff's land than otherwise would have been there; but the Court in effect told the jury, that if damage ensued to the plaintiff from the flowing of water from the defendants' drains and sewers, in its natural course *therein,* the defendants were not liable, whether the quantity of water thrown on the plaintiff's land was increased thereby or not.

The Court further charged the jury, "that if the defendants caused any damage by turning off the water of the Augusta canal through the drains of the city, they were responsible therefor, but that they were not liable for any damage caused by overflowing the banks, or for discharging the waters to avoid overflow."

This charge, in my judgment, was also error, and calculated to mislead the jury. The effect of the charge was to tell them that the defendants might discharge the water through their *drains* upon the plaintiff's land, to avoid an overflow of the same caused by turning off the water of the Augusta canal through the drains of the city, without being liable for any damages. It is true, the Court did not tell the jury, in so many words, that the defendants might discharge the water which run in their drains from the Augusta canal on the plaintiff's land, to prevent an overflow of their drains, without being liable for damages; but where else was the

water to be discharged, according to the facts in the case, if not on the plaintiff's land? It was the duty of the defendants, when they undertook to construct drains and sewers for the purpose of carrying off the water from the city, so to construct and manage the same as not to overflow the land of other people, and if they failed to construct their drains of sufficient capacity to do so, they certainly had no legal right to discharge the water on the plaintiff's land to avoid an overflow of their *own drains*. According to the general principles of the law applicable to the facts of this case, as I understand them, the defendants (a municipal corporation) were bound so to construct and manage their drains and sewers for the benefit of the city as to carry off the water therefrom without injury to the rights of others; and if, by the unskillful construction of such drains and sewers, or by the negligent management of the same by the defendants, their agents, or servants, injury and damage results therefrom, they are liable for such injury and damage. The main controling question in this case is, whether the plaintiff has been injured and damaged by the defendants in consequence of having a greater quantity of water thrown upon his land by the defendants' drains and sewers, for the benefit of the city, than would otherwise be there if such drains and sewers had not been constructed to carry off the water from the city including that introduced by the Augusta canal, under its present management by the city authorities. Although, in my judgment, there is a preponderance of evidence in favor of the plaintiff, still I would not disturb the verdict, but for the errors in the charge of the Court to the jury; the case was not fairly submitted to the jury under the law applicable thereto.

Let the judgment of the Court below be reversed.

McCay, Judge, concurring.

I do not entertain a doubt but that the right to flow water upon another's land is an easement that may be acquired by prescription—that is, by twenty years' uninterrupted enjoyment of the right. The rule that the statute of limitations

does not run in favor of a nuisance, only applies to public nuisances, and grows out of the impropriety of imputing laches to the public : 7 East, 195 ; 4 Burrows, 2163 ; 4 Mass., 522 ; 42 Maine, 150. On the other hand, it is laid down in Angell on Water Courses, as a general rule, that the special right to a use of a water course, or to flow water upon the land of another may in all cases be acquired by prescription : Angell on Water Courses, section 200, and he says again, section 206, " we are aware of no authority, English or American, which gainsays the doctrine that the upper proprietor of land may, by a use for a sufficient period of time, acquire a right to keep open an ancient agricultural drain or ditch through land below, for the purpose of draining his own premises."

One can acquire the right to the land itself by use and possession, and it would be strange if one could not acquire by the same method a mere easement over it. And the books are full of cases acknowledging the right : 1 B. and P., 400 ; 3 East, 294 ; 11 East, 371 ; 6 East, 208 ; 1 Camp, 263 ; 2 Brod. & Bing., 667 ; 1 Sim. & Stuart, 203 ; 3 B. & A., 76. I think, for this reason, that the right to throw the surface water falling on the city into the river, by a ditch or drain through this land, if it has been exercised for twenty years by the city without interruption, is established by prescription. But I think, also, that the surface water which falls from heaven over land and has not got into a stream, belongs to the owner, and he can use it or turn it at his pleasure. If he keeps his land ploughed, so that it sinks into the earth, or if he builds houses upon his land, or paves it so that the water must run off over other lower land, in either case he does no legal hurt. This is a natural servitude which the lower land owes to the higher, and cultivation and improvement would be impossible if the rules applying to running streams were to extend to surface water : See Angell on Water Courses, section 108, (a,) where the subject is fully discussed and the authorities cited. But I think the city has no right to introduce water by a canal, so as to make an artificial stream, and so use that water

as, either by want of proper care, or by design, to flood the plaintiff's land.

There is no pretence that this canal has been for twenty years pouring water over this land. There is evidence, however, that it does often happen that the water from the canal is let off through the ditches, and that the land of the plaintiff is flooded thereby, and we think the law ought to have been given to the jury on this evidence. As to the natural drainage of the city—waste water used by the people, etc.—we think the lower land must bear the burden of it; but the escape water of the canal—the flow from its overrunning its gates, etc.—are a wrong, if such flow exists, to the plaintiff, which the city has no right to inflict, and we think the case ought to go back and be reheard on this point. As we understand the case, even the statute of limitations does not help this view of it, as the canal has been used to overflow in this way for the period of twenty years.

MONTGOMERY, Judge, concurred in the views entertained by McCAY, Judge, but furnished no opinion.