[No. 8543.   Department Two.—May 22, 1885.]

## MICHAEL CONNIFF, RESPONDENT, v. THE CITY AND COUNTY OF SAN FRANCISCO, APPELLANT.

| | |
|---|---|
| 67 | 45 |
| 80 | 343 |
| 67 | 45 |
| 96 | 3 |
| 67 | 45 |
| 103 | 467 |
| 67 | 45 |
| 109 | 623 |
| 67 | 45 |
| 115 | 653 |
| 67 | 45 |
| 117 | 311 |
| 67 | 45 |
| 128 | 233 |
| 67 | 45 |
| 131 | 99 |
| 131 | 101 |

MUNICIPAL CORPORATION—GRADING STREET—TRESPASS—OBSTRUCTING WATER-COURSE—MONTGOMERY AVENUE IMPROVEMENT. —In grading Montgomery Avenue under the Act of April 3, 1876, the city and county of San Francisco had no authority to erect an embankment across a natural water-course in such a manner as to obstruct the natural flow of the waters therein, and cause them to run over and permanently remain on the land of an adjoining proprietor. Such conduct is a trespass amounting to the taking of the property of another. The former Constitution of California under which the work was done renders void all legislation purporting to authorize such a proceeding.

ID.—ACTION FOR INJURIES— STATUTE OF LIMITATIONS. —The Act of April 3, 1876, does not provide a mode of compensation for such damages, and consequently the party injured may maintain an ordinary action therefor against the municipality. Such an action is not barred until the expiration of three years from the time the cause of action accrued.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*J. F. Cowdery,* and *John L. Love,* for Appellant.

The damages complained of are incidental to a public work duly authorized by statute, and are therefore *damnum absque injuria.* (*Moulton* v. *Parks,* 64 Cal. 166; *Green* v. *Swift,* 47 Cal. 536; *Jennings* v. *LeRoy,* 63 Cal. 397.)   The

municipality is not answerable for the acts or omissions of its officers. (Shearman & Redfield Negligence, § 138; *Alcorn* v. *Philadelphia*, 44 Pa. St. 348; *Winbigler* v. *Los Angeles*, 45 Cal. 36; *Crowell* v. *Sonoma Co.* 25 Cal. 313; *Howard* v. *San Francisco*, 51 Cal. 52.)

*Wright & Cormac*, and *John A. Wright*, for Respondent.

Public works must be executed with proper care and skill. If so executed, damages resulting therefrom are generally *damnum absque injuria*. But if carelessly or unskillfully executed and damages result to the citizen, his action always lies. (*Grim* v. *Swift*, 47 Cal. 540; Shearman & Redfield Negligence, §§ 131, 137, 144.) The action is for trespass upon real property and was not barred until three years. (Code Civ. Proc. § 338.)

THORNTON, J.—This action was brought to recover damages for injuries to plaintiff's lot and building caused by grading Montgomery Avenue, in the mode provided for grading streets in the general statute in regard thereto. It is averred in the complaint that in grading the street mentioned an embankment was formed fifteen feet above the plaintiff's property and the contiguous lots, by which the water that ran in a water-course crossing the street was permanently stopped in its flow and backed upon plaintiff's lot causing damage to it and the building thereon; that the street was thus made in accordance with the specifications furnished by the superintendent of streets, highways, and public squares, and under his direction and to his satisfaction; that this officer neglected and failed to have a culvert made in this embankment by which the water which flowed in the water-course mentioned would have been carried off, which neglect and failure constituted a want of skill and neglect on the part of the superintendent in the construction of the street.

It appears from the bill of exceptions that on the trial the plaintiff proved the following facts:—

"That the grading of Montgomery Avenue as alleged in the amended complaint, was completed on the 12th day of June, 1879. That prior thereto there was a channel within about 200 feet of plaintiff's premises, through which the drainage or surface waters

from the hills in the vicinity of said premises discharged into the bay. That when completed the grade of said avenue formed a solid embankment across said channel and obstructed the same, and prevented the water from flowing into the bay as formerly. That said embankment was and is about fifteen feet above plaintiff's premises. That immediately upon the completion of said grading, to wit, on the said 12th day of June, 1879, the drainage or surface water which had theretofore been discharged through said channel, flowed upon and flooded plaintiff's premises, and the said drainage or surface waters have ever since that time remained upon said premises. That at the time the said premises were so flooded the same were damaged."

If upon these facts and the inferences justly deducible from them by the triers—for the jury not only find facts, but are authorized to find all inferences of fact justly to be deduced from the facts found (*Shafter* v. *Evans*, 53 Cal. 32; *Sillem* v. *Thornton*, 3 El. & B. 873)—the law is with the plaintiff, then the verdict as regards any question arising on the facts is unimpeachable and the judgment must stand. Then, in considering these facts, we must also take into consideration all the inferences which the jury may justly have deduced from them.

Now the facts referred to show a channel within about 200 feet of plaintiff's premises through which the drainage or surface waters flowed into the bay; that this channel was obstructed by a solid embankment built across it about fifteen feet above the plaintiff's property, which prevented the waters from flowing into the bay as formerly; that the waters which flowed into this channel and were discharged by it, came from the hills in the vicinity of the plaintiff's premises; that on completion of the embankment mentioned, the waters which had been prior to that time discharged through the channel were detained on plaintiff's premises, flowed upon and flooded them, have ever since remained permanently upon them, and damaged them.

This improvement of Montgomery Avenue by grading it was executed under the Act of April 3, 1876. (See Stats. 1875–76, p. 753, and § 19 of this act.) This section provides for the awarding a contract for the work referred to by the board of supervisors of the city and county of San Francisco, on the happening

of an event designated in section 17 of the same act, and it is further provided in the same section that all the proceedings both before and after the awarding of the contract shall be the same as was at that time provided by law for the grading of streets in the said city and county.

The act then in force regulating the grading of streets was the Act of April 1, 1872 (see Stats. of 1871–72, pp. 804, 805, *et seq.*), in which the powers and duties of the superintendent·of streets were defined and to some extent those of the contractor. Under the provisions of this act the contractor must have performed the work of grading to the satisfaction of the superintendent of streets, before he can procure an assessment to be made and a warrant issued for the compensation he is to receive. (§ 9, Act of 1872.) The work is to be performed under the charge, superintendence, and inspection of the superintendent. (§ 26 of same act.) The grading of streets of the city of San Francisco can only be done under an order of the board of supervisors.

The facts proved show that the embankment stopped the flow of the waters in the channel of usual escape, formed by the operation of natural causes, so that they were thrown back and detained on the lot of plaintiff, and caused the damage complained of. Can this be done? Conceding that a municipal corporation is not responsible for damage caused by the gathering of the surface waters,.not running in a natural channel, produced by the raising of a street to the grade established by law, it does not follow that it would not be responsible herein. Here a natural channel is stopped, one which it may be properly inferred had existed for a long series of years,· and the water thus dammed is forced to flow over a lot 200 feet distant from the channel. · It is well settled that a municipal corporation has no right, in the .absence of valid legislative authority, changing what would otherwise be the legal rights of the parties, to stop up a natural channel through which waters run by an embankment made in grading a street, under its general power to grade and improve streets. (See *Baron* v. *Baltimore*, 2 Am. Jur. .203, cited, commented upon, and approved in *Stetson* v. *Faxon*, 19 Pick. 147; 31 Am. Dec. 123; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; 7 Am. Dec. 526; *Phinizy* v. *Augusta*, 47 Ga. 260.)

An individual has no right to collect in artificial channels mere surface water, and precipitate it upon the land of another. Nor has a corporation, whether public or private, the right to collect in such channels mere surface water precipitated by rain or snow over large districts, and throw it upon the property of another. The cases to this effect are numerous, and may be found cited in a note to section 272 of Gould on Waters. We know of no principle of law which justifies either a corporation or individual in stopping up by an embankment or dam a natural channel by which surface waters escape, obstruct the natural flow of such waters, and cause them to run over and permanently remain on another's property. Such conduct would be a most flagrant trespass on the rights of another in the shape of a direct invasion of his land amounting to a taking of it within the rule laid down in *Pumpelly* v. *Green Bay Co.* 13 Wall. 166, occasioning inconvenience and damage to him and thus constituting a nuisance. The case last cited from 13th Wallace is a direct authority for this conclusion. The action in this case was against a private corporation—here against one that is public and municipal—but we are not aware that there is anything in the nature or essence of the corporation known as the city and county of San Francisco, though public and municipal in its character, or in the statutes relating to it, which justifies it, even in the prosecution of a public work authorized by statute, and for the public benefit, in taking the property of another. The former Constitution of California under which the work was done as well as the Constitution now in force renders null all legislation purporting to authorize such a proceeding.

We take occasion to cite with hearty approval the following remarks of the Supreme Court of the United States in the case just referred to, speaking by Miller, J.:—

" We are not unaware of the numerous cases in the State courts in which the doctrine has been successfully invoked that for a consequential injury to the property of the individual arising from the prosecution of improvements of roads, streets, rivers, and other highways for the public good, there is no redress; and we do not deny that the principle is a sound one, in its proper application, to many injuries to property so originating. And when, in the exercise of our duties here, we shall

be called upon to construe other State Constitutions, we shall not be unmindful of the weight due to the decisions of the courts of those States. But we are of opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction in favor of this principle, and, in some cases, beyond it, and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judical authority in this country, and certainly not with sound principle. Beyond this we do not go, and this case calls us to go no further." (See also Gould on Waters, § 243, notes.)

The case before us is not one of mere consequential damage which the land owner must protect himself against, and for which the law affords him no redress. It is a direct trespass on the property of plaintiff by the construction of a dam which a moment's reflection would have made clear to any one, must inevitably in the course of nature have resulted in the permanent overflowing the land of plaintiff when the rainy season came, and from which he could only free himself by cutting away a public highway, for which he might have been proceeded against both by a civil and criminal action.

The cases of *Moulton* v. *Parks*, 64 Cal. 166, and *Green* v. *Swift*, 47 Cal. 536,. have no application here. Nor is the case before us one where the damage has resulted from an error of judgment in officers to whose judgment the mode of grading the street was submitted by law for determination. It is a direct invasion of property rights, which no error of judgment can excuse or justify. Rights of property are assured by the settled principles of law, and are not at the mercy of the fallible judgment of men. The citizen or officer is bound to know these rights. If he violates them he must take the consequences.

But it is said that the statute of April 3, 1876, above cited, provided for a compensation for the injury complained of to the plaintiff, and where that is the case an action like this cannot be maintained.

Conceding the legal consequence above stated to be correct,

the question remains to be determined whether the act in question provides for compensation for the damage suffered by plaintiff. We are referred to the fifth section of the act by the counsel for defendant. The section is in these words:—

"The county clerk of the city and county of San Francisco, within forty days after the passage of this act, shall publish for thirty days, in the official newspaper of said city and county, a notice simply stating that by an act of the legislature, approved on the —— day of ——, eighteen hundred and seventy-six (giving the date of approval of this act), the grades of certain portions of Montgomery Avenue and of certain portions of certain streets intersecting Montgomery Avenue, in the city and county of San Francisco, have been changed, and referring to this act for further particulars, and requiring every person claiming damages by reason of said changes, within thirty days after the first publication of said notice, to file with the county clerk a verified statement, setting forth the description and situation of the claimant's property, its market value, and the amount of damages, over and above all benefits, which the claimant will sustain, and that upon the failure of any person to file such statement within the prescribed time, his or her claim or right to damages shall be forever forfeited."

Every person claiming damages by reason of the changes of grade of the street (Montgomery Avenue) was required by the above section to file his claim for such damages within the time specified with the county clerk, to be presented to commissioners who were to pass on and determine the same, and when so determined provision was made by the act for their payment. (See §§ 5, 6, 7, 8, etc.) The act was passed for the purpose of changing the grade of the street, and to provide for the grading and regrading of portions of it. (See title of act.) We have no doubt that the damages referred to for which claims were to be filed were such as might arise from the actual grading of the street, by raising the surface thereof, by the deposit of earthy material on it to the established grade, or by lowering it by taking off earthy material to such grade. But certainly this had reference to the employment of the powers of the defendant corporation in grading in a lawful manner. It had no reference to the employment of such powers to the extent of

embanking and damming a natural channel for the escape of waters, through which waters had flowed for many years, so that the waters thus obstructed would flow back on the property of another, and there remain permanently covering such property and creating a nuisance. The property owner could not anticipate any such injury. Certainly the plaintiff here could not anticipate that such channel would. be stopped up and obstructed, so that a quantity of water would accumulate in a permanent pool or pond in sufficient quantity to overflow his lot distant about 200 feet from the channel. This was a consequence which could not be foreseen or counted on. Nor would the commissioners to determine the damages under the act have allowed any claim for such damage. They would at once have seen that any such claim would be for damage not legitimately the result of grading the street, not following from the lawful exercise of powers vested in the municipality, but for a trespass which the city and its officers were restrained by law from committing. The law imposed on them no such duty, and the claim in the proper and discreet exercise of their powers must have been disallowed for the reasons above given. Neither the property owners nor the commissioners had before them the specifications of the work to be performed, for they had not then been framed. Under the act such specifications were not to be framed until some time afterwards. (See §§ 17, 19, of the Act of 1876.) For the reasons above given they could not anticipate nor even conjecture that such specifications would call for an embankment damming the waters of a natural channel through which they had flowed for an indefinite period, to the injury of others, by causing the waters to flow back upon other property and permanently cover it.

We are of opinion that such unforeseen and unanticipated damages consequent on the plan of grading adopted, not the result of grading the streets in a lawful mode to the modified levels, but the result of the mode of performing the work in a manner not authorized by law, were not contemplated or referred to in the statute, and therefore, that no mode of compensation was provided for in the act for the character of damages complained of and suffered in this cause. (See on this, Gould on Waters, § 378, notes.) The contention of appellant on this point cannot be upheld.

The defendant requested the court to direct the jury as follows:—

"This action was commenced the 2d day of December, 1881. If the jury believe from the evidence that the damage to plaintiff's property occurred more than two years before the commencement of the action, he cannot recover."

This request was refused and an exception was reserved.

In no view that we can take of the proposition presented by the request can we perceive that the court erred in refusing it. Under no circumstances did the action accrue for anything on the facts found until the 12th day of June, 1879, and the plaintiff had three years from that date to bring his action. The act complained of was a trespass on real property, and the action for damages caused by it was not barred for three years from its accrual. (See § 338, Code Civ. Proc.)

As the case presents a continuing nuisance, we are inclined to think that like any other trespass on real property, a new cause of action arises each day during which it continues. (*Bonner* v. *Welborn*, 7 Ga. 327; *Phinizy* v. *City Council of Augusta*, 47 Ga. 266.) But it is unncessary here to so hold, and we therefore refrain from placing the decision on such ground.

We find no error in the record and the judgment is affirmed.

MYRICK, J., and SHARPSTEIN, J., concurred.