MYERS v. NELSON et al.[*]

Sac. No. 31; May 1, 1896.

44 Pac. 801.

Highways—Obstruction of Culvert.—Where owners of land adjacent to a highway construct a system of artificial ditches, converging at a culvert crossing such highway, so as to discharge an unnatural quantity of water on the lower lands on the opposite side of such highway, the owner of such lower lands cannot dam the culvert on the highway for the purpose of protecting her lands from such overflow.

---

[*]Rehearing denied.

APPEAL from Superior Court, Butte County; John C. Gray, Judge.

Action by Elizabeth Myers against J. M. Nelson and J. C. Richardson to enjoin defendants, who are, respectively, road supervisor and his employee, from digging up and removing earth which plaintiff had placed across a culvert crossing a highway, for the purpose of preventing the flow of water through such culvert on her land, in which a preliminary injunction was allowed. From an order dissolving such injunction plaintiff appeals. Affirmed.

W. H. Carlin and M. E. Sanborn for appellant; H. V. Reardon for respondents.

BRITT, C.—Defendant Nelson is a member of the board of supervisors of Butte county and ex-officio road commissioner in and for his supervisor district. Under the direction of said board, it is his duty to take charge of the highways in his district, keep them clear from obstructions and in good repair, and employ the help necessary for that purpose: Pol. Code, secs. 2641, 2645. Defendant Richardson is employed by Nelson in caring for the highways of the district, and it is admitted that in the matters laid to their charge here they acted officially, and under the instructions of the board of supervisors. There is a highway under the superintendency of said Nelson running from east to west along the line between sections 10 and 15 of a certain congressional township, which highway has existed as such for more than five years, regularly laid out and constructed by order of said board. It occupies a strip of land four rods in width along the boundary between said sections, two rods in each section, it seems; and the roadway or traveled portion thereof has been graded and elevated about eighteen inches above the surface of the surrounding soil, this being necessary to its use during the rainy season. Such elevation was effected by taking the earth from either side of the roadway, and within said strip four rods wide, leaving upon each side of the roadway a depression or gutter lower than the adjacent surfaces. The country for some miles around slopes gently from northeast to southwest. At the lowest point on said section line is a culvert through and under said roadway for

the purpose of carrying off surface water accumulating in the highway. The bottom of such culvert was on a level with the bottom of the gutters on the sides of the roadway, and we may infer that the result of this arrangement was to allow any water accumulating on the north side of the roadway to flow through the culvert to the south side thereof, where, if not further obstructed, it would find its way to the somewhat lower land to the south in section 15. This land —four hundred and eighty acres in area—is the property of plaintiff, but the right of way for said highway along the said northern boundary of the same was granted by her predecessors in interest to said county. The surface of the land of plaintiff, and also that of several sections lying north and northeasterly therefrom, is marked with low ridges and shallow depressions or "sinks," which cause the natural drainage of the same to be "slow, gradual and incomplete." Within a period of five years next before the commencement of the action (which was November 26, 1894), divers persons, owners and occupants of said lands lying north and northeasterly of plaintiff's, have from time to time constructed ditches, "with many lateral connections, and with a slight and even fall of grade in a general southerly and westerly course," converging to a point on said section 10 near the north end of said culvert. The effect of such system of ditches, as claimed by plaintiff, is to collect the surface water from the land, and discharge it in unnatural volume and greatly accelerated flow at said point of convergence; and none of it, she alleges, would reach that point naturally, or at all, except by such system of artificial ditches. In order, it seems, to prevent the passage of the water brought down by means of such ditches through said culvert and upon her land, plaintiff entered upon the highway at the north end of the culvert, and, by means of earth, filled in the gutter on the north side of the roadway to a level with the surrounding soil, so that the water which would naturally flow in said gutter accumulates and overflows the roadway, and travel thereon is impeded. The defendants, for the "protection, benefit and maintenance of said public highway," were about to dig up and remove the earth with which plaintiff had caused such gutter and culvert to be obstructed as aforesaid, when plaintiff brought this action to enjoin them from so doing, claiming that the effect of their intended acts would be to cause all of the waters carried

through said system of ditches to be precipitated upon her land, and flood the same, to her irreparable injury. A preliminary injunction was allowed, which, on motion of defendants, heard upon the complaint and answer, was dissolved by the court. The order of dissolution is the subject of the present appeal.

Upon the papers before it, the court might fairly have found the facts to be as we have stated; and we think they warranted its action dissolving the injunction. Plaintiff invokes the doctrine, which we have no inclination to deny, that highway officers may not collect in artificial channels mere surface water precipitated by rain over large districts, and throw it upon the property of another (Conniff v. San Francisco, 67 Cal. 49, 7 Pac. 41; Gould on Waters, secs. 261, 272); but here the plaintiff does not claim that either the gutters along the sides of the highway or the culvert have the effect to collect surface water in its natural flow in such manner as to occasion any injury to her. On the contrary, it clearly appears from her complaint that the surface water from the lands above her own would not reach said culvert in any harmful quantity but for the system of artificial ditches constructed for the more rapid drainage of their lands by her neighbors. Defendants are not shown to be in any way responsible for the ditch system which, in point of time, followed the construction of the highway. To restrain the water brought down "through the medium of said system of artificial ditches" (the phrase of the complaint) from reaching her land, plaintiff claims, virtually, that she may use the roadway as a dam, closing up the inlet to the culvert to make the stoppage effectual, to the impairment of the highway and hindrance of public travel. If a herd of cattle had been unlawfully turned loose, so that, by traversing the highway, they might enter on her land, we suppose that she would have no right to impound them in the road, or to enjoin the road commissioner from removing structures she might erect there for that purpose, and that the responsibility for the damage the cattle might do would be upon the persons who set them at large, and not upon the roadmaster. The case put seems not much different from the case at bar. "If the owner of the upper ground wrongfully direct an unnatural quantity of water upon the ground of a lower neighbor, by collecting several streams together, and discharging them at one place,

or by any other means, the neighbor below may have an action against him; but he cannot justify the erection of an embankment to stop the water if thereby the water is improperly forced upon another owner'': Martin v. Riddle, 26 Pa. 415, 417. See, also, Mathews v. Kinsell, 41 Cal. 512; Amick v. Tharp, 13 Gratt. 564, 67 Am. Dec. 787. The order appealed from should be affirmed.

We concur: Searls, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order appealed from is affirmed.