[Civ. No. 566. Fourth Appellate District.—March 10, 1932.]

TEMESCAL WATER COMPANY (a Corporation), Respondent, v. ANNA M. MARVIN et al., Appellants.

Anderson & Anderson and Victor T. Watkins for Appellants.

Walter S. Clayson, Hewitt, McCormick & Crump and Guy Richards Crump for Respondent.

JENNINGS, J.—This is an action in eminent domain by which plaintiff sought to condemn twelve parcels of land, the properties of various defendants. Plaintiff is a mutual water company engaged in the business of supplying water to the lands of its stockholders for irrigation purposes and to the inhabitants of the city of Corona for domestic use. At the time the action was instituted, plaintiff was engaged in the construction of a dam on property which it owned in a certain canyon. The land on which the dam was being constructed is known as the "Van Fossen Property" and the dam is generally referred to as the "Van Fossen dam". The various parcels of land sought to be condemned were sought by plaintiff to form part of a reservoir to be created by the impounding of water behind the Van Fossen dam.

Of the various parcels of land thus sought to be condemned, the largest is a parcel which is designated as parcel No. 12 owned by defendants Bertha T. Kuert and Ira J. Kuert. This parcel comprises an entire section of land. Following the conclusion of the trial which was had before the court and a jury, impaneled for the purpose, the jury returned verdicts fixing the reasonable market value of the various parcels. The jury found the reasonable market value of parcel No. 12 to be $16,000. Thereupon the court made findings of fact which adopted the values fixed by the jury in its verdicts and rendered its decree permitting the plaintiff to acquire and take the land sought upon making payment to the defendants of the various amounts which had been found to be the reasonable market value of the respective parcels. The record shows that plaintiff duly paid into court the sums of money thus provided to be paid, whereupon the court rendered final judgment of condemnation, decreeing that plaintiff is the owner in fee of the land sought to be condemned. From the judgment determining the value of the various parcels of land and providing that plaintiff should acquire and take it upon payment of the amounts therein specified, certain defendants have appealed.

During the trial of the action two hydraulic engineers, John A. Bell and H. Hawgood, were called as witnesses by appellants for the purpose of having these witnesses give their opinions as to the values of parcels of land sought to be condemned. The court sustained respondent's objections to the testimony of the witness Bell and granted respondent's motion to strike from the record the testimony of the witness Hawgood as to the value placed by him on the respective parcels. Appellants complain of the court's rulings in the instances specified and assign them as errors warranting a reversal of the judgment.

The question presented by the court's ruling sustaining respondent's objections to the testimony proposed to be elicited from the witness Bell regarding the market value of the land relates to the qualification of the witness. The witness stated that he had examined the land sought to be condemned from two sources of information. These were, first, personal examination of the land for one day which was four days prior to the commencement of the trial and, second, study and examination of government

topographical maps covering not only the area where the reservoir site is located but the general area where the San Jacinto River originates and through which it flows. He described the two beneficial uses for which the land in section 35 was adapted from an engineering standpoint and further stated that he had familiarized himself with the different uses to which land is generally adaptable and that the land in section 35 could be put to other beneficial use, irrespective of its uses viewed solely from an engineering standpoint. The witness was then asked if he could give an opinion as to the reasonable market value of section 35, to which he gave the following answer: ''Before I answer that, I would ask whether there is any such a market value for part of the river, and I reply No, so it would be a contradiction of terms if I said market value.'' Counsel for respondent was then permitted to interrogate the witness relative to his qualification to give an opinion as to the market value of the land in section 35. This inquiry developed the following facts: That the witness was not acquainted with real estate values and would not attempt to testify as to such values; that in giving his opinion as to the value of the land he would base his answer in part upon the fact that the land was being considered for reservoir purposes. The court then asked the witness the following question: ''You were asked by Mr. Anderson if you knew the market value of land similar to this, what it would sell for in the market. I understood you to say you did.'' Whereupon the witness replied: ''I don't think I did say anything like that.'' The court then sustained respondent's objection that no proper foundation had been laid to warrant the witness giving his opinion as to the market value of section 35, the court remarking that he thought the witness had not been shown to be competent to testify as to the value of the land. Further effort was then made to qualify the witness to give his opinion as to the market value of the land in section 35. During this latter examination the witness stated that he was able to give an opinion as to the market value of the land uninfluenced by the fact that respondent had commenced a project which involved the acquisition of a reservoir site and that the land in section 35 would be included as a part of the reservoir site. Prior to being permitted to give his opinion, counsel

for respondent was again allowed to cross-examine him touching his qualification to give an opinion as to market value of the land. During this cross-examination, the witness in reply to the inquiry what he understood to be meant by the expression "market value", stated that he understood it to be the price that a seller could procure for property provided he had a reasonable time to find a buyer who was willing to pay the price he wanted to pay for it. The latter part of the answer is obviously indefinite. The witness later dispelled the uncertainty by the statement: "I said willing to pay the price—he is willing to pay the price asked." The answer indicated that the witness did not comprehend the true meaning of market value and that, despite repeated efforts to qualify him to testify as to the market value of the land, he did not show himself to be so qualified and the court's discretion was not abused in refusing to permit him to give the sought-for opinion.

A somewhat different problem is presented by the court's action in granting respondent's motion to strike from the record the testimony of the witness H. Hawgood as to the market value of land in section 35 and in other parcels sought to be condemned. This latter witness, after testifying as to his long familiarity with the area involved with respect both to its topography and the geological formation of the region, stated his opinion as to the adaptability of section 35 for a reservoir site. He was then permitted without objection to give his opinion as to the market value of the land in section 35 and stated that in his opinion the market value of section 35 was $178,200. He also gave his opinion of the market value of land in other parcels sought to be acquired by respondent. However, on cross-examination this witness stated that, in giving his opinion as to the market value of the land in section 35, he had taken into consideration the value of section 35 in connection with the Van Fossen dam and that the land in section 35 was part of a reservoir which would be formed by the erection of the Van Fossen dam and that if section 35 were not used in connection with the Van Fossen dam his estimate of the market value of section 35 would be less. He further stated that when he placed a valuation of $178,200 on section 35, he had in mind that the land had such value as a completed project in connection with the Van Fossen

dam and that it would be used by respondent in connection with the Van Fossen dam. Respondent thereupon moved to strike his testimony as to market value of the land, which motion was granted. Further examination of the witness was then had to develop the capacity of the witness to give an opinion as to market value. During this examination the witness stated that he could give such an opinion completely eliminating from consideration by him any value that the land might have as a completed project. He then again stated that in his opinion the land in section 35 had a market value of $178,200. Upon further cross-examination the witness testified that in thus giving his opinion of the market value of the land in section 35 he had taken into consideration the construction of the Van Fossen dam, that the dam would cost approximately $200,000, and that it would be necessary to overflow lands to the north of section 35 in order to develop a maximum storage capacity of 5,100 acre-feet and that he considered these three features as interrelated parts of one project. Respondent thereupon again moved to strike from the record the testimony of this witness as to market value on the ground that the witness in giving his opinion as to market value had considered the land in section 35 as part of an interallied project, contemplating the erection of a dam on the Van Fossen property and the creation of a storage reservoir on lands above the dam site. The motion to strike the testimony was granted.

In giving consideration to the contention of appellants that the court committed reversible error in thus striking from the record the testimony of the witness Hawgood as to the market value of the land, we bear in mind that the qualification of the witness to give an opinion respecting the value of the land is not involved. No objection for insufficient showing of qualification was interposed. The ground of the motion to strike was that the witness in giving an estimate of market value of the land had taken into consideration elements that were improper to be considered in arriving at the conclusion presented that the market value of the land was $178,200. From the summary of his testimony hereinabove presented, it conclusively appears that this witness in giving his opinion as to market value took into consideration the following factors: First, the construction of the Von Fossen dam; second, that the dam

would cost approximately $200,000, and third, that, in completing the project for the storage of water, land lying to the north of section 35 owned by persons other than the owners of section 35 would necessarily be overflowed and finally that he considered these three features as interrelated parts of the project contemplated. The witness thus took into consideration that the land in section 35 would be used in connection with respondent's land and with other land separate from that in section 35 and that section 35 was part of a project for the storage of water by respondent. This brings the problem within the rule announced in *San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50, 65 [11 L. R. A. 604, 25 Pac. 977, 981], in the following language:

"The question was, not what the property was worth to the person intending to acquire it and the dam site and the remainder of the reservoir by purchase or condemnation for the purpose of supplying water over the territory tributary to the system, but what was the market value of the property itself. In other words, what the defendants could have obtained for their land if it had been offered for sale in the market, a reasonable time being given within which to make the sale. The plaintiff must compete in the market with *bona fide* purchasers generally, but its necessities cannot be taken advantage of. So far as the value of the land in controversy may have been increased to purchasers generally by the construction and use of the plaintiff's dam and reservoir, or as a part of the entire reservoir site, such fact should be considered, but the value of the land when used in connection with the plaintiff's land cannot be taken as a criterion, for this would be taking the value of the plaintiff as the measure of compensation. The jury had a right to consider the fact, in determining the market value, that the land in controversy was in proximity to a dam site, and to consider its adaptability for reservoir purposes, and to determine whether or not its market value had been enhanced by improvements put upon adjoining property; but for the reasons stated its adaptability for reservoir purposes should not have been considered 'in connection with such dam site and other adjacent lands'."

Again it is said in *Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408, 412 [104 Pac. 979, 981]: ". . . the test is not the value for a special purpose, but the fair market value

of the land in view of all the purposes to which it is naturally adapted; that therefore while evidence that it is 'valuable' for this or that or another purpose may always be given and should be freely received, the value in terms of money, the price, which one or another witness may think the land would bring for this or that or the other specific purpose is not admissible as an element in determining that market value. For such evidence opens wide the door to unlimited vagaries and speculations concerning problematical prices which might under possible contingencies be paid for the land, and distracts the mind of the jury from the single question—that of market value—the highest sum which the property is worth to persons generally, purchasing in the open market in consideration of the land's adaptability for any proven use.''

The above quotations clearly indicate that in eminent domain proceedings the law contemplates that the owner of land shall be compensated for the full market value of the property taken and that the major factor to be determined in ascertaining market value where land is sought for reservoir purposes is what it is worth in the market for such purposes, not what it is worth to the condemner. Obviously, if the worth to the condemner is to be the measure of market value advantage may always be taken of the necessities of the condemner and a value essentially different from that which obtains in a competitive market will be reached. The case of *City of Stockton* v. *Ellingwood,* 96 Cal. App. 708 [275 Pac. 228, 232], is relied upon by appellants as authority strongly supporting their contention that the trial court committed reversible error in striking from the record the opinion of the witness Hawgood as to the market value of the land sought to be condemned. In embarking upon an analysis of the decision in the Ellingwood case, it must be conceded that the problem therein presented was strikingly similar to that which is presented by the appeal herein. In the Ellingwood case it appeared that the city of Stockton proposed to erect a restraining dam on the Calaveras River which should serve the double purpose of controlling the flood waters of the stream during the rainy season, thus avoiding the danger of periodical flooding, and the storing of large quantities of water for domestic, irrigation and power purposes. The defendants were owners of several

tracts of land which would in part be submerged in the event of the construction of the proposed dam. The action involved the ascertainment of the value of the land proposed to be submerged. The cause was tried before the court sitting without a jury. It was contended by the city of Stockton on appeal that the findings of the court as to the compensation to be awarded to the various defendants for land taken were not supported by evidence which was legally admissible. It appeared that the testimony introduced on the part of the respondent land owners was practically all directed to the availability and adaptability of the lands for reservoir purposes and that the special value for such purposes gave to the land sought to be condemned a market value largely in excess of that which it would have for other purposes. This testimony was sought to be stricken from the record and appellant assigned as reversible error the court's action in denying its motion to strike. In affirming the judgment, the District Court of Appeals for the Third District points out that the testimony elicited on cross-examination as to all the physical capacities and adaptabilities of the land sought to be condemned did not furnish a basis for striking out the opinions of the witnesses, given on direct examination, as to general market values. It was conceded that portions of the testimony of various witnesses brought out upon cross-examination might properly have been eliminated as being speculative in character upon proper motion but that advantage could not be taken of such defects under the claim that the trial court committed error in refusing to strike from the record the opinions of respondents' witnesses as to the market value of the various parcels of land. It was said that in determining values in actions of eminent domain, where, for certain purposes, the lands are extremely valuable, and for other and different purposes, of little or no value, courts are confronted with many difficulties, the chief of which is sometimes the apparent fact that there is no market value, in the strict sense of the word, but that this does not entitle a plaintiff to take the lands sought to be condemned without paying just compensation. Taking into consideration first, that the action was tried by the court without the assistance of a jury and second, that the court found that the lands sought to be condemned had a market value substantially less than

that fixed by any of the expert witnesses, it was held that the court had not committed reversible error in refusing to strike testimony respecting the availability of the lands for reservoir purposes even though the expert witnesses in giving such testimony had in mind a completed project. It is this latter factor which obviously gives the greatest encouragement to appellants in their contention that the trial court erred in striking from the record the testimony of the witness Hawgood as to the market value of the lands herein sought to be condemned since it is at this precise point that the decision in the Ellingwood case most closely touches the problem presented in this appeal. From the reported testimony of the witness Hawgood it is apparent that, when he fixed the market value of section 35 at the figure $178,200 he had in mind not only the availability of the land for reservoir purposes and that the land was peculiarly adapted to the specific purpose for which it was sought, but that he also had in mind a completed project of which the land in section 35 was a necessary part. If, under such circumstances, bearing in mind that the court was trying the action with a jury, it shall be held that the court committed reversible error in eliminating such evidence from the record, then indeed a vital blow has been struck at the long established doctrine that, in fixing the market value of lands sought to be taken by proceedings in eminent domain, advantage may not be taken of the necessities of the condemner. As was said in *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528, 533 [28 Pac. 681, 682] :

"The question is thus presented whether assuming that the land sought to be taken was specially valuable for the purpose named, it was relevant and competent to show such value. There is undoubtedly some conflict in the authorities as to the admissibility of questions put in this form, but we think the point was decided in favor of the admissibility of such evidence, in the case of *San Diego Land etc. Co.* v. *Neale,* 78 Cal. 63 [3 L. R. A. 83, 20 Pac. 372], and in the same case on a second appeal to this court. (88 Cal. 50 [11 L. R. A. 604, 25 Pac. 977].) Nor would this rule, as supposed by respondent, justify the admission of speculative opinions based upon the necessities of the plaintiff, or what the plaintiff could afford to give for the

land rather than to do without it. If it should appear, during the course of the examination, that a witness had given an opinion as to value formed upon any such considerations, it would be the duty of the court to strike such opinion evidence out as resting upon an illegal and improper basis. The rule is, that the owner is entitled to the market value of his land, to be determined in view of all the facts which would naturally affect its value in the minds of purchasers generally, which necessarily makes it proper to consider for what purpose it is most valuable.''

In *Santa Ana* v. *Harlin,* 99 Cal. 538 [34 Pac. 224, 226], the court said: ''The present market value of the land is the measure of damages, and not its value in use to the owner or to the parties seeking to condemn.''

In *City of Stockton* v. *Ellingwood, supra,* it is said: ''The different elements considered by the witnesses, in giving their opinions as to market value may be inquired into on cross-examination, and if, upon such cross-examination, it appears to the court that the witness' testimony is based upon improper consideration, or upon what is usually termed as speculative only, it should be stricken from the record or withdrawn from the consideration of the court or the jury.''

Since, therefore, the opinion of the witness Hawgood as to the market value of the land sought to be condemned was based upon a consideration of the land as part of a completed project involving as it did the use of the land sought in conjunction with land of the respondent and with other land separate from the lands of appellants and respondents, a consideration, which we believe was improper, the action of the trial court in striking such an opinion from the record was proper.

The judgment is therefore affirmed.

Barnard, P. J., and Marks, J., concurred.