[Civ. No. 9329.   First Appellate District, Division Two.—April 11, 1934.]

CITY OF PASADENA (a Municipal Corporation), Respondent, v. UNION TRUST COMPANY OF SAN FRANCISCO et al., Defendants; LOUIE POLLARD et al., Appellants.

Bernard Potter and Donald M. Keith for Appellants.

Harold P. Huls, City Attorney, and John W. Holmes, Deputy City Attorney, for Respondent.

SPENCE, J.—Plaintiff sought to condemn two parcels of land for use as part of a proposed dam and reservoir site in San Gabriel Canyon. The parcel designated as parcel number 2 belonged to the defendants Pollard, while the parcel designated number 5 belonged to the defendants O'Melveny. Upon a trial by the court sitting without a jury, plaintiff had judgment. The trial court found in part that the market value of said parcel number 2, belonging to the defendants Pollard, was the sum of $15,000 and

entered judgment accordingly. This appeal from the judgment has been taken solely by the defendants Pollard.

Appellants' attack upon the judgment relates solely to the amount which they were awarded for said parcel number 2, which parcel consisted of 31.07 acres. The testimony relating to the market value of said parcel on February 23, 1932, which was stipulated as the proper date for the determination of market value, was voluminous. Several witnesses were called and their opinions on the market value of said parcel varied from $1389 to $75,000. Only two of the ten experts placed the figure at more than $20,000, while five of said experts placed the figure at less than $10,000. The reason for the wide variance between these figures is found in the fact that certain experts based their estimates of market value upon the availability of said parcel 2 for use as part of a dam and reservoir site consisting of over 400 acres, while other experts made their estimates of market value without considering the availability of said parcel 2 for use for such purposes. A great deal of the testimony of appellants' witnesses was admitted over the objections of respondent, who contended throughout the trial that the availability of said land for use as part of a dam and reservoir site could not be considered in fixing the market value for the reasons hereafter discussed. At the conclusion of the trial the court expressed dissatisfaction regarding the state of the testimony. During the discussion between court and counsel, the trial court said that "The only testimony that is at all satisfactory to the court is Mr. Sonderegger's testimony, and he puts the value at $13,328." The court further said, "As the evidence stands now, the Court is going to be compelled to find that the value of this particular property is just about the same for dam and reservoir purposes as it is for cabin sites. And I do not mind giving you the Court's estimate of value now. . . . It will be $15,000.00." The trial court therefore found as follows in finding number XI: "The court finds that the market value of the property of the defendant Grace Pollard sought to be condemned herein and heretofore in these Findings of Fact described, on the 23rd day of February, 1932, was $12,500.00; and that the value of all of the improvements thereon pertaining to the realty on said date was the sum of $2,500.00; that the land of the defend-

ant Grace Pollard, sought to be condemned herein, consists of all of an entire parcel of land and that there is no damage to any remaining parcel; that the aggregate market value of said lands, and the improvements thereon, as of said date, was the sum of $15,000.''

It is apparent from what has been said that there is ample evidence to sustain said finding number XI relating to market value. The trial court, however, made certain further findings bearing upon this subject and it is upon certain portions of these further findings that appellants make their attack and thereby indirectly attack said finding number XI. We deem it advisable to set forth some of these further findings bearing upon the question of the market value of said parcel number 2.

Finding number VI reads: ''The Court further finds that no one of the several parcels of land sought herein to be condemned is, when considered alone, useful or adaptable to use as a reservoir right of way or dam site; that prior to the commencement of this action, the plaintiff endeavored to purchase parcels of privately owned land in the reservoir right of way sought to be condemned herein and of which the land of the defendant Grace Pollard hereinabove described is a part; that in endeavoring to acquire said parcels of land, the plaintiff City of Pasadena approached the owner of one of said parcels (Parcel No. 5 herein), to-wit, H. W. O'Melveny, for the purpose of negotiating such purchase; and that the said H. W. O'Melveny thereupon refused to sell his said parcel of land and refused to name any price at which the City might acquire his said land; that without union with said Parcel No. 5 the highest available use of Parcel No. 2 is for cabin sites and like resort and residential purposes.''

Finding number VII reads: ''The court further finds that on March 27, 1923, prior to the commencement of this action, the City of Pasadena, the plaintiff herein, filed with the Division of Water Rights of the Department of Public Works of the State of California, applications for the appropriation of unappropriated waters of the San Gabriel River; that in response thereto there has been granted to the City of Pasadena by the said Division of Water Rights, a permit to appropriate 40,000 acre feet of such water per year, not

to exceed 30,000 acre feet per year over any five year period."

Finding number VIII reads: "The court further finds that in 1925, and prior to the commencement of this action, the City of Pasadena acquired and now holds title to two parcels of property which lie within that part of San Gabriel Canyon embraced within the flow-line of any reservoir right of way which might be topographically available for lands in union with Parcel No. 2; that the City of·Pasadena heretofore has obtained an option on 139.81 acres of land belonging to the Southern California Edison Company and lying within that part of San Gabriel Canyon which would be embraced within the flow-line of any reservoir which might be topographically available for lands in union with Parcel No. 2."

Finding number X reads: "The court further finds that the highest available use of the lands included within Parcel No. 2 is for cabin sites and like resort and residential purposes."

Assuming, without deciding, that findings VI, VII, VIII and X were material findings, we shall proceed to a consideration of appellants' contentions with respect thereto. Appellants state their contentions as follows: (1) "Adaptability of parcel for dam or reservoir purposes may be considered although it alone does not constitute an entire site and a complete site requires joining it to a number of other tracts belonging to different owners"; (2) "Commencement of eminent domain proceedings could not affect right to show adaptability for any purpose"; and (3) "The fact that the City of Pasadena had acquired certain rights to water, rights of way, etc., did not preclude the right to show the adaptability of parcel 2 for dam site and reservoir purposes."

■ At first glance the above-mentioned points raised by appellants would seem to indicate that appellants were deprived of the opportunity of showing that parcel 2 was part of a larger tract, which larger tract was adaptable as a dam and reservoir site. On the contrary, appellants were given the widest latitude in making such showing and it appears that such adaptability was conceded by all parties. Said points would seem to indicate further that appellants' experts were not permitted to consider the adaptability

of the entire site for dam and reservoir purposes in estimating the market value of parcel number 2. Such was not the case. The trial court, over the objection of respondent, allowed appellants' witnesses to consider the adaptability of appellants' land for every purpose in making their estimates of market value. As we view the record and the briefs filed herein, the gist of appellants' attack is that the trial court erred in determining that "the highest available use" of parcel number 2 was for cabin sites and further erred in fixing the market value, as indicated by the findings above set forth, without considering the adaptability of parcel number 2 for use as part of a site for dam and reservoir purposes.

The general question before us on this appeal is not a new one. Similar questions have frequently been before the courts of this state and also before the courts of other jurisdictions. In *City of Stockton* v. *Vote,* 76 Cal. App. 369 [244 Pac. 609], this general subject and numerous authorities are discussed at length. We quote but a short passage from page 407 of the opinion where the court said, "If it should appear in the case at bar that there are other lands which the defendant does not own and cannot acquire, then and in that case, which is a fact for the jury to pass upon, the value of the land for reservoir purposes should be eliminated." In *City of Stockton* v. *Ellingwood,* 96 Cal. App. 708 [275 Pac. 228], the authorities are again reviewed. The court there said on pages 728 and 729, "In the principal case of *City of New York* v. *Sage,* 239 U. S. 57 [60 L. Ed. 143, 36 Sup. Ct. 25], the Supreme Court of the United States holds: 'The decisions appear to us to have made the principles plain. No doubt when this class of questions first arose, it was said in a general way that adaptability to the purposes for which the land could be used most profitably was to be considered, and that is true. But it is to be considered only so far as the public would have considered it if the land had been offered for sale in the absence of the city's exercise of the power of eminent domain. The fact that the most profitable use could be made only in connection with other land is not conclusive against its being taken into account if the union of properties necessary is so practicable that the possibility would affect the market price. But what the owner is entitled to

is the value of the property taken, and that means what it fairly may be believed that a purchaser, in fair market conditions, would have to give for it in fact; not what a tribunal, at a later date, may think a purchaser would have been wise to give, nor a proportion of all the advance due to its union with other lots. The city is not to be made to pay for any part of what is added to the land by thus uniting it with other lots, if that union would not have been practicable or been attempted except by the intervention of eminent domain. Any rise in value before the taking, not caused by the expectation of that event, is to be allowed, but we repeat, it must be a rise in what a purchaser might be expected to give.'" Continuing on page 731, the court said: "There is nothing in the record indicating that any attempt whatever has been made to unite the lands in one parcel without resort to eminent domain proceedings."

We believe that the general rules set forth in the foregoing cases are too well settled to require further citation of authority. We shall therefore proceed to discuss briefly the application of said rules to the facts in the present case. It appears that appellants owned a parcel of land which constituted a part of a possible dam and reservoir site; that the vast area of land making up the entire dam and reservoir site was previously in the hands of numerous owners; that respondent had acquired numerous valuable rights from the federal and state authorities for the purpose of proceeding with its proposed dam and reservoir project; that respondent had acquired certain parcels of land and had obtained an option on other land; the respondent had attempted to acquire all of the land within the proposed dam and reservoir site without resorting to proceedings in eminent domain, but that said attempt had failed as the owner of parcel number 5, which parcel consisted of approximately 60 acres, had absolutely refused to sell said parcel 5 at any price and that respondent had been compelled to resort to proceedings in eminent domain in order to accomplish the joinder of the parcels of land within the dam and reservoir site.

The question thus presented is stated by appellants in their brief as follows: "It being conceded by all to be a natural dam site and reservoir site, did the Court err in

holding that by reason of the facts that Pasadena had purchased two parcels prior to starting condemnation proceedings; that it had secured a reservoir right of way from the Federal Government; that it had made water filings and acquired certain water rights; permits from Division of Water Resources; secured permit to construct dam; acquired all other properties in reservoir site except Parcels 2 and 5, and owner of Parcel 5 had refused to fix a price thereon, no consideration could be given to the testimony of witnesses as to the value of the property when based upon its adaptability for dam or reservoir purposes?''

We believe that the answer to the question as thus stated is that the trial court as the trier of the facts was justified in determining that because of the impracticability shown by the record of joining appellants' land with the remaining lands in the dam and reservoir site without resort to eminent domain and because respondent had theretofore acquired certain rights and permits from the federal and state authorities, the adaptability of appellants' land for use as a part of a dam and reservoir site would not have increased the value of appellants' land in the minds of purchasers generally and therefore should not be considered in fixing the market value. We believe that all the findings of the trial court were sustained by the evidence and under the circumstances the fixing of the market value without regard to the adaptability of appellants' land for use as part of a dam and reservoir site was entirely proper under the rules set forth in the authorities cited. In view of what has been said we do not deem it necessary to deal separately with each of the contentions of appellants as above set forth.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 31, 1934.