[Civ. No. 10352. Second Appellate District, Division One.—May 15, 1936.]

PERCY D. JEFFERIS et al., Respondents, v. CITY OF MONTEREY PARK (a Municipal Corporation), Appellant.

F. F. Gualano for Appellant.

John Dennison and John H. Foley for Respondents.

DESMOND, J., *pro tem.*—Appeal from a judgment in favor of plaintiffs and from an order denying motion for a new trial.

During the year 1933, defendant city raised the street level of a thoroughfare known as Newmark Street approximately 25 feet. Newmark Street runs in an easterly direction from a north and south street known as Atlantic Avenue. One block north of Newmark Street, parallel with it, and extending in the same direction, is Garvey Avenue. Between Garvey Avenue and Newmark Street, plaintiffs' property faces west on Atlantic Avenue about 140 feet north of New-

mark Street. It has a decided slope, falling about 25 feet to the rear of the lot, a distance of 160 feet. Prior to the improvement of Newmark Street the county of Los Angeles formed a drainage district in the neighborhood of these streets and adjoining territory, and installed a storm drain extending southerly for several miles from a point north of Garvey Avenue, and crossing or passing beneath intervening streets, including Newmark Street. The drain pipe measures some 6 or 7 feet in diameter, and was laid at the rear of plaintiffs' property, lateral connections being made at various points, and catchbasins being installed along the course of the improvement. The fact that a storm drain was deemed necessary indicates that at this location a considerable body of water moved, at least occasionally. The trial court found "that from time immemorial, there was a natural watercourse extending in a general northerly and southerly direction from a point a considerable distance north of Garvey Avenue which was located approximately nine hundred feet north of Newmark Street and extends in a southerly direction along the rear of plaintiff's premises and across Newmark Street extending southerly some miles distant beyond the southerly limits of Monterey Park".

By reason of the blockade or dam formed by a 16-foot fill on Newmark Street and the failure of the storm drain with its laterals and catchbasins to adequately handle the rush of waters running down the natural watercourse, found by the court to exist, a great volume of water was thrown upon plaintiffs' land in the heavy storm of New Year's Eve, 1933–1934, with the result that their home and outbuildings were almost submerged, damage resulting to the buildings and their contents.

It is contended on this appeal that various findings made by the court are not supported by or are contrary to the evidence; therefore that the judgment based thereon should be set aside.

Particular exception is taken to the finding that there existed a natural watercourse which was obstructed by the newly laid-out Newmark Street. ■ The importance of this finding becomes apparent when we consider the decisions in *Conniff* v. *San Francisco*, 67 Cal. 45 [7 Pac. 41], and *Corcoran* v. *City of Benicia*, 96 Cal. 1 [30 Pac. 798, 31 Am. St. Rep. 171]. In the San Francisco case the municipality was

held liable for damages resulting when water backed up on plaintiff's land by reason of an embankment 15 feet high, built by defendant in the grading of Montgomery Avenue. The court commented thus upon the facts and the law:

"The facts proved show that the embankment stopped the flow of the waters in the channel of usual escape, formed by the operation of natural causes, so that they were thrown back and detained on the lot of plaintiff, and caused the damage complained of. Can this be done? Conceding that a municipal corporation is not responsible for damage caused by the gathering of the surface waters, not running in a natural channel, produced by the raising of a street to the grade established by law, it does not follow that it would not be responsible herein. Here a natural channel is stopped, one which it may be properly inferred had existed for a long series of years, and the water thus dammed is forced to flow over a lot 200 feet distant from the channel. It is well settled that a municipal corporation has no right, in the absence of valid legislative authority, changing what would otherwise be the legal rights of the parties, to stop up a natural channel through which waters run by an embankment made in grading a street, under its general powers to grade and improve streets." (Cases cited.) See, also, *Richardson* v. *City of Eureka*, 96 Cal. 443 [31 Pac. 458].

In the Benicia case it was held that the city could not be held responsible "for damages caused by the gathering of 'the surface waters not running in a natural channel produced by the raising of a street to the grade established by law' ", citing 2 Dillon on Municipal Corporations, sec. 1039, and various cases. *Conniff* v. *San Francisco* and *Corcoran* v. *City of Benicia* still express the law of California on the subjects involved, both being referred to in a recent valuable article appearing in 7 Southern California Law Review, 293 et seq., where Professor Leon David has collected and discussed the California cases' bearing upon the question of municipal liability for "Obstruction of Water Courses, and Diversion of Surface Waters".

Appellant contends that no natural watercourse or channel existed here, but a swale, similar to that described in *Sanguinetti* v. *Pock*, 136 Cal. 466, at page 471 [69 Pac. 98, 89 Am. St. Rep. 169], where the country around and about the lands of defendant was level, and a witness testified that

the general depression in the neighborhood of plaintiff's land was about 80 feet in width, 2½ miles long, and had a depth varying from 6 inches to 2½ feet. But, in the instant case, a witness testified that water formerly ran throughout the year in a ditch at the rear of his lot (adjoining the plaintiffs'), which ditch was about 12 feet wide, with steep banks about 6 or 8 feet high. It appeared also that water which flowed through this channel had been used at a lower point for irrigation, and Mrs. Jefferis testified that even after the storm drain had been installed there was water flowing in this watercourse past plaintiffs' premises. We have already noticed that there was a fall of 25 feet from the front to the back of plaintiffs' property, and this fact, together with other evidence, some of which we have just mentioned, justified the trial court, in our opinion, in finding here, not a swale, but a natural channel or watercourse, under a proper definition, such as appears in *Hellman etc. Bank* v. *Southern Pac. Co.*, 190 Cal. 626, 632 [214 Pac. 46].

As to the objection raised to the finding of negligence on the part of defendant city, we merely call attention to the fact that in constructing the embankment that raised Newmark Street to the official grade, the city officials and employees failed to install (even though they may have designed) sufficient drain ways or culverts to permit the escape of waters from plaintiffs' land, a situation similar to that existing in the Conniff case (*supra*) and *Weisshand* v. *City of Petaluma,* 37 Cal. App. 296 [174 Pac. 955], where the landowner recovered from the municipal corporation. Appellant argues that the severity of the storm constituted an act of God, relieving the city of responsibility. But the case cited in support of this argument says, "Nor is a ditch or canal owner responsible for that which is *solely* the result of the act of God, or inevitable accident. It is only when human agency is combined with the act of God and neglect occurs in the employment of such agency, that a liability for damage results from such neglect." (*Nahl* v. *Alta Irr. Dist.,* 23 Cal. App. 333, 337 [137 Pac. 1080].) (Italics ours.)

We infer from this that one who obstructs a natural watercourse as completely as noted in the present case is deprived of the defense based upon superhuman cause. See Judge Myers' instruction on this subject at page 636, *Hellman etc. Bank* v. *Southern Pacific Co.* (*supra*).

Appellant finally contends "that the evidence produced by plaintiffs as to their damages was insufficient". We do not take this view, noting that a contractor, called by plaintiffs, testified that merely repairing plaintiffs' buildings would cost $1,936.34, whereas the total award by the court for all damages to buildings and contents was limited to $1100.

The appeal from the order denying a new trial, not being authorized in this, a civil case, is dismissed.

Judgment affirmed.

York, Acting P. J., and Doran, J., concurred.