[L. A. No. 18968. In Bank. Dec. 5, 1944.]

LILLIAN CANDACE HOUSE, Appellant, v. LOS AN. GELES COUNTY FLOOD CONTROL DISTRICT, Respondent.

Henry M. Lee for Appellant.

J. H. O'Connor, County Counsel, and S. V. O. Prichard, Assistant County Counsel, for Respondent.

CURTIS, J.—This is an appeal from a judgment of dismissal entered after the trial court had sustained a demurrer to the plaintiff's first amended complaint without leave to amend.

The plaintiff, as the owner of certain land in Los Angeles County adjacent to the Los Angeles River, undertakes to state a cause of action based upon damages to her property by reason of the negligence of the defendant district in its planning, construction and maintenance of certain flood control channel work in said river. She rests her right of recovery upon article I, section 14, of the state Constitution, which provides that private property shall not be taken or damaged for public use without just compensation to the owner. The trial court erred in failing to sustain the constitutional basis of the plaintiff's claim under the distinguishable concept of her pleading.

As appears from the amended complaint, the gist of the plaintiff's case is as follows: In pursuance of its plan for flood control, the Los Angeles County Flood Control District removed permeable dikes, piling, wire mesh and groins that bordered the Los Angeles River adjacent to the plaintiff's land and replaced these installations with levees. The effect of the dikes and other obstructions had been to reduce the high velocity of the river waters in flood season by permitting them to spread over an extensive overflow area, leaving a de-

posit of silt thereon. Upon the removal of these protective structures and the substitution of the levees along the river banks, the regimen of the stream was completely changed in that there was no provision for overflow spread on adjoining lands, with the result that the waters were confined to a smaller area and their velocity was greatly increased. The plaintiff charges the defendant district with negligence in these principal particulars in the planning and erection of the newly installed flood control works: (1) in failing to make the artificial river channel of sufficient size to accommodate the augmented volume of waters in flood season; and (2) in building the levees of improper materials—sand and gravel upon which were piled small stone blocks of inadequate size, without being bonded together with cement, grout or other substance—so that they were unable to withstand the erosive force of the river waters. The plaintiff then alleges that as the proximate result of these negligent acts, the storm waters flowing in the Los Angeles River on March 2, 3 and 4, 1938, broke through the levees and burst with great violence upon her adjacent land, denuding it of its soil to a depth of from six to ten feet and washing away all the improvements situate thereon, to her damage in the sum of $30,663. The plaintiff further avers that the defendant district's undertaking of such public improvement work was not occasioned by such imminent peril or emergency in relation to the general welfare as would excuse it from taking proper measures in the course of construction—during the years of 1935, 1936 and 1937—to safeguard her property from the danger attendant upon its pursuit of a flood control plan contrary to good engineering practices, and its installation and maintenance of defective structures following the removal of the protective agencies that had theretofore existed along the river banks. In this connection the plaintiff alleges that she suffered no damage to her property during the great flood of the Los Angeles River in January, 1934.

It would serve no useful purpose to engage here in a detailed discussion of the opposing arguments as to whether under the above mentioned constitutional provision a public agency in the installation of river channel improvements is generally liable to the property owner for overflow damage incident to the exercise of such governmental function. The divergent views on that unqualified proposition were fully

reviewed by this court recently in the cases of *Archer* v. *City of Los Angeles* (1941), 19 Cal.2d 19 [119 P.2d 1] and *O'Hara* v. *Los Angeles County Flood Control Dist.* (1941), 19 Cal.2d 61 [119 P.2d 23]. While the latter case involved the same flood control project as is now subject of complaint and under the prevailing view there, the varying claims of damage were held to be noncompensable upon distinguishable theories, the liability feature here arises under a different aspect. By her pleading the plaintiff advances, in the nature of a limitation upon a public agency's performance of its governmental function, the charge of *negligence,* an added feature which did not enter into the O'Hara decision. Accepting the premise of argument of the parties here that a levee improvement made in the channel of a stream for the general welfare is referable to the police power, the propriety of its exercise must still be considered under the distinct circumstances presented.

While the police power is very broad in concept, it is not without restriction in relation to the taking or damaging of property. When it passes beyond proper bounds in its invasion of property rights, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation. (*Varney & Green* v. *Williams,* 155 Cal. 318 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A.N.S. 741]; *Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119, Ann. Cas. 1915C 822, 50 L.R.A.N.S. 652].) In fact, on the point of a governmental agency's liability for damages arising in connection with its undertaking construction work, the prevailing opinion in the Archer case, *supra,* does not purport to dispute the settled principle that public necessity limits the right to exact uncompensated submission from the property owner if his property be either damaged, taken or destroyed. Rather it is expressly stated there in the prevailing opinion (19 Cal.2d 23-24): ''The state or its subdivisions may take or damage private property without compensation if such action is *essential* to safeguard public health, safety or morals. [citing authorities.] *In certain circumstances, however, the taking or damaging of private property for such a purpose is not prompted by so great a necessity as to be justified without proper compensation to the owner.* [citing authorities.]'' (Italics added.) Thus there is recognized the incontestable proposition that the exercise of the police power, though an essential attribute of sovereignty for the public welfare

and arbitrary in its nature, cannot extend beyond the necessities of the case and be made a cloak to destroy constitutional rights as to the inviolateness of private property.

A case closely in point here is *Pacific Seaside Home* v. *Newbert P. District,* 190 Cal. 544 [213 P. 967], where the sufficiency of the plaintiff's pleading was likewise under attack. There this court said at pages 545-546: ". . . The defendant was a public corporation . . . entitled to maintain and defend actions in law and in equity . . . and would be liable for the *negligent* diversion of storm waters upon the plaintiff's property. (*Elliott* v. *County of Los Angeles,* 183 Cal. 472, 475 [191 P. 899].) The gist of the plaintiff's complaint is that the defendant *constructed channels for the water of the Santa Ana River so defectively and negligently that they would not carry the waters of the stream.* Plaintiff alleges that 'had the defendant not changed the natural course of the Santa Ana River, or in anywise interfered with its natural flow, the waters of the Santa Ana River would have flowed on into Newport Bay and no damage would have accrued to the plaintiff had the said river been permitted to flow as it naturally would had not the defendant constructed its channel to divert the same. . . .' It is further alleged in effect that the injury occurred to the plaintiff by reason of the fact that the defendant *negligently turned the waters of the Santa Ana River in a channel which was too small, and which was negligently constructed and maintained, and that by reason thereof it was damaged.*

"These facts sufficiently state a cause of action." (Italics added.)

The Elliott and Pacific Seaside Home cases were cited as the basis for upholding the sufficiency of the plaintiffs' complaint against a general demurrer in the first appellate consideration of the damage claim presented in *Archer* v. *City of Los Angeles,* 15 Cal.App.2d 520 [59 P.2d 605]. The pleading was described by the District Court of Appeal as follows at pages 521-522: "The gist of [the] . . . complaint . . . is that respondent constructed and built an artificial drainage system so defectively, carelessly and negligently that it would not carry the storm waters to the Pacific Ocean as designed and intended" and "that the injury to the appellants occurred by reason of the fact that respondent negligently turned the storm waters into La Ballona lagoon, which was too small to

conduct the water turned into it by and through the drainage system constructed, operated and maintained by respondent. . . .'' Subsequently, the Archer damage action was before this court for decision upon the appeal from the judgment of nonsuit entered at the close of the plaintiffs' evidence at the trial. (*Archer* v. *City of Los Angeles, supra,* 19 Cal.2d 19.) In the prevailing opinion affirming the judgment, the following distinction, after quotation of the above portion of the decision of the District Court of Appeal on demurrer, was made at page 29: ''According to the allegations of the complaint, the damage resulted because defendants negligently diverted water out of its natural channel, and obstructed the channel of the creek. Plaintiffs' evidence, however, fails to substantiate such allegations. The decision of the District Court of Appeal on demurrer is therefore not binding on this court in passing on the *sufficiency of the evidence to support the allegations.''* (Italics added.) Measured by its own limitation, such language, denoting the deficiency in the plaintiffs' establishment of their case, does not mean that a governmental agency in the installation of stream improvements may escape liability under the constitutional compensation requirement where the property owner sustaining damage from such work *proves, in accordance with his allegations, negligence* in the construction and maintenance of the public project. Under the accepted circumstances there, the prevailing opinion in the Archer case applied the doctrine of *damnum absque injuria* by declaring that the governmental agency was exercising a riparian right so that it would be no more liable to a lower property owner damaged thereby than would a private person inflicting a like injury in protection of his upper lands. (*Archer* v. *City of Los Angeles, supra,* at p. 24; *cf. O'Hara* v. *Los Angeles County Flood Control Dist., supra,* at p. 63.)

In the present case the defendant district may not escape liability on any theory of exercising a riparian right, for the plaintiff does not correlate her damage claim with any such principle. Rather she makes the direct charge that the defendant district removed a safe and secure protection to her land immediately adjacent thereto and substituted therefor an unsafe, carelessly and negligently planned bank or wall, resulting in the overflow, inundating and washing away of her property, which had theretofore never been visited by the

river waters. ■ It is a principle of universal law that wherever the right to own property is recognized in a free government, practically all other rights become worthless if the government possesses an uncontrollable power over the property of the citizen. Upon this premise the plaintiff relies on the *unnecessary* damage to her property as the result of the defendant district's negligence in the planning, construction and maintenance of the flood channel work to sustain the constitutional basis of her claim. In other words, it is her position that damage suffered by a property owner as the result of a public improvement undertaken in the exercise of the police power must have some reasonable relation to the purpose to be accomplished under the prevailing circumstances, and that the governmental agency proceeding with such work. may not *needlessly* inflict injury upon private property without being liable to make compensation therefor. This accords with the general object of the constitutional guaranties in protection of property rights and but places upon a reciprocal basis the individual's damage in relation to the public benefit. *Unnecessary* damage to his property is of no benefit to the public; rather it only entails unwarranted sacrifice and loss on the individual's part, which should be compensable damage.

■ Unquestionably, under the pressure of public necessity and to avert impending peril, the legitimate exercise of the police power often works not only avoidable damage but destruction of property without calling for compensation. Instances of this character are the demolition of all or parts of buildings to prevent the spread of conflagration, or the destruction of diseased animals, of rotten fruit, or infected trees where life or health is jeopardized. In such cases calling for immediate action the emergency constitutes full justification for the measures taken to control the menacing condition, and private interests must be held wholly subservient to the right of the state to proceed in such manner as it deems appropriate for the protection of the public health or safety. (18 Am.Jur. 778; 29 C.J.S. 784.) ■ But the present case.does not appear to be one of such emergency character as would preclude the defendant district from being held liable for *unnecessary* damage resulting from the alleged inadequate and negligent planning, construction and maintenance of its flood channel project. According to the plaintiff's pleading, the defendant district, with time to exercise a deliberate choice of action in the manner of its installation

of the river improvements, followed a plan "inherently wrong" and thereby caused needless damage to her property.

While mere errors of judgment in planning and constructing a public work may be consistent with reasonable care, procedure so grossly incompetent and contrary to "good engineering practices" as to constitute negligence may well give the injured property owner just cause for complaint upon the ground that the governmental agency responsible for the project has transgressed the limits of the police power. (*Kaufman* v. *Tomich*, 208 Cal. 19 [280 P. 130].) Such conclusion does not make the public agency, in undertaking its flood control program, an insurer against all possible damage which thereby might be inflicted on private property (*cf.* *United States* v. *Sponenbarger*, 308 U.S. 256 [60 S.Ct. 225, 84 L.Ed. 230], but it merely requires that the damage to the individual, on whom the sovereign power justifiably makes demands in the public interest, not exceed the necessities of the particular case due to a failure to use reasonable care and diligence.

In view of the organic rights to acquire, possess and protect property and to due process and equal protection of the laws, the principles of nonliability and *damnum absque injuria* are not applicable when, in the exercise of the police power, private, personal and property rights are interfered with, injured or impaired in a manner or by a means, or to an extent that is not reasonably necessary to serve a public purpose for the general welfare. (*Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322]; cited with approval in *Archer* v. *City of Los Angeles, supra*, at p. 24.)

For the foregoing reasons the defendant district's exercise of the police power does not of itself furnish complete justification for the infliction of damage upon the plaintiff's property without liability for compensation. Under the theory of her pleading, the plaintiff has alleged facts sufficient to constitute a cause of action within the scope of article I, section 14, of the state Constitution, and it was error for the trial court to rule otherwise. The judgment of dismissal is therefore reversed.

Gibson, C. J., and Shenk, J., concurred.

SCHAUER, J.—I concur in the foregoing judgment and opinion. The distinction made in the opinion between this

case and the cases of *Archer* v. *City of Los Angeles* (1941), 19 Cal.2d 19 [119 P.2d 1], and *O'Hara* v. *Los Angeles County Flood Control Dist.* (1941), 19 Cal.2d 61 [119 P.2d 23], seems tenable, but by my concurrence herein I do not imply accord with the majority views expressed in those cases.

TRAYNOR, J.—I concur in the judgment. Since this is an appeal from a judgment following an order sustaining a demurrer, the following allegations of the first amended complaint must be regarded as true. The Los Angeles River, which becomes a menace to the neighboring property during the rainy season because of its violent floods, overflowed plaintiff's land during a storm in the first days of March, 1938, washed out the land to a depth of approximately six to ten feet, and destroyed buildings, other improvements, and personal property. The injury was caused by a system of flood control installed by defendant in the period between December, 1935, and the storm. The plaintiff's property would have been protected from the flood, as it was in January, 1934, during an even greater flood, had the defendant not replaced the former system of flood control, installed by defendant between 1917 and 1930, with new structures that were inadequate for the purpose. The former installations consisted of permeable dikes of piling and wire mesh along the margin of the river bed through which the waters could freely flow into an overflow area on both sides of the river channel. These structures and the riparian vegetation reduced the velocity of the flood waters, rendering them less dangerous to neighboring property. Groins installed transversely to the overflow area accomplished the restoration and maintenance of the natural condition of the river by causing a regrowth of vegetation in the overflow area and the building up of that area with silt deposited by the water. The new construction work, mainly excavation of the river channel and installation of levees along its banks, necessitated removal of the shrubs and trees along the river. The channel was narrowed and its capacity to carry water lowered, while the velocity of the water through the channel was increased. Since the levees lacked adequate openings to permit the drainage waters to flow into the river, the danger to the adjacent land from overflowing water was intensified. The levees were built several feet above the level of the riparian area and were thus exposed to great pressure by the water compressed

into the narrowed channel. They were constructed of sand and gravel upon which small stone blocks were laid on the inner slopes not bound together with cement or other material. As a consequence of this defective construction of the levees, upon which the adjacent land depended for its protection, the water could flow through the holes between the stone blocks and percolate through the levees. Thus, the invasion of plaintiff's land by the flood water was caused by the defectiveness of defendant's structures, which diverted the water out of its natural channel onto the plaintiff's land. For the damages sustained, plaintiff seeks compensation from defendant under article I, section 14 of the California Constitution, providing that private property shall "not be taken or damaged for public use" without just compensation.

Defendant contends that plaintiff is seeking to revive an issue settled in *Archer* v. *City of Los Angeles*, 19 Cal.2d 19 [119 P.2d 1], and in *O'Hara* v. *Los Angeles County Flood Control Dist.*, 19 Cal.2d 61 [119 P.2d 23]. The Archer case involved the question whether a governmental agency is liable under article I, section 14, when improvements constructed by it along the natural course of a stream accelerate the flow of the water, and lower lands are flooded because of the inadequacy, known to the governmental agency, of the outlet to accommodate the increased flow. It was held that the governmental agency was not liable, since there is no liability under the constitutional provision if the property owner would have no cause of action were a private person to inflict the damage, and there would have been no cause of action against a private person for installing improvements in the stream accelerating the flow of the water but not diverting it out of its channel. (*San Gabriel Valley Country Club* v. *County of Los Angeles*, 182 Cal. 392 [188 P. 554, 9 A.L.R. 1200].) The O'Hara case involved the same question as the Archer case as well as the question whether a governmental agency is liable under the constitutional provision to a property owner whose property was damaged by the obstruction of the flow of surface water not running in a natural channel resulting from an embankment that prevented the drainage of surface waters into the river. In reliance on *Corcoran* v. *City of Benicia*, 96 Cal. 1 [30 P. 798, 31 Am.St.Rep. 171]; *Conniff* v. *San Francisco*, 67 Cal. 45 [7 P. 41]; *Jefferis* v. *City of Monterey Park*, 14 Cal.App.2d 113 [57 P.2d 1374]; and

*Lampe* v. *San Francisco,* 124 Cal. 546 [57 P. 461, 1001], it was held that in constructing the improvement, the governmental agency could validly exercise its police power to obstruct the flow of surface waters not running in a natural channel without making compensation for the resulting damage. The present case differs from the Archer and O'Hara cases. In the former there was no evidence that defendants negligently diverted water out of its natural channel, and in the latter there was no allegation of such diversion. Here plaintiff's allegations that the damages to her property were caused by diversion of the water of a river out of its natural channel onto her land by means of defective levees causing and allowing the water to burst out of its channel onto her land must be regarded as true.

Defendant contends that article I, section 14, is inapplicable upon the grounds that defendant did not deliberately take or damage plaintiff's property and did not utilize it for the purposes of its public improvements, and that therefore the damages were not sustained for "public use," and were too remote in point of time and foreseeability to be incident to defendant's public undertaking.

Defendant is a public corporation created by an act of the Legislature, known as the "Los Angeles Flood Control Act" (Stats. 1915, p. 1502, as amended; Deering's Gen. Laws, Act 4463), to protect lands, including harbors and public highways from flood waters and to conserve the flood waters for useful purposes. (§ 2 of the act; *Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119, 126 [169 P. 1028].) These purposes are essentially public although beneficial to many private individuals (see *Los Angeles* v. *Los Angeles County Flood Control Dist.,* 11 Cal.2d 395, 404 [80 P.2d 479]; *Los Angeles County Flood Control Dist.* v. *Hamilton, supra,* p. 124; *Cheseboro* v. *Los Angeles County Flood Control Dist.,* 306 U.S. 459, 465 [59 S.Ct. 622, 83 L.Ed. 921]; see 29 C.J.S. 852; 70 A.L.R. 1274), and the Legislature properly vested defendant with the power of eminent domain. (§§ 2(6), 16, 16½ of the act.) Property taken or damaged for defendant's purposes is therefore "taken or damaged for public use" in the sense of the constitutional provision. In the absence of contract the right to discharge water onto another's property may be based on property law or on the police power of the state. (*Archer* v. *City of Los Angeles, supra,* at p. 24.) If the discharging of water incident to the construction of a public

improvement cannot be sustained as the exercise of a right, it is a taking or damaging within the meaning of the constitutional provision of the property injured. (*Powers Farms* v. *Consolidated Irr. Dist.,* 19 Cal.2d 123, 126 [119 P.2d 717]; *Pacific Seaside Home* v. *Newbert·P. Dist.,* 190 Cal. 544 [213 P. 967]; *Elliott* v. *County of Los Angeles,* 183 Cal. 472, 475 [191 P. 899]; *Smith* v. *City of Los Angeles,* 66 Cal.App.2d 562 [153 P.2d 69]; *Conniff* v. *San Francisco,* 67 Cal. 45, 48 [7 P. 41]; *Jacobs* v. *United States,* 290 U.S. 13, 16 [54 S.Ct. 26, 78 L.Ed. 142]; *United States* v. *Cress,* 243 U.S. 316, 327 [37 S.Ct. 380, 61 L.Ed. 746]; *United States* v. *Lynah,* 188 U.S. 445, 470 [23 S.Ct. 349, 47 L.Ed. 539]; *Hurley* v. *Kincaid,* 285 U.S. 95, 104 [52 S.Ct. 267, 76 L.Ed. 637]; *Pumpelly* v. *Green Bay etc. Co.,* 13 Wall. 166, 177 [20 L.Ed. 557]; *Eaton* v. *Boston etc. Railroad,* 51 N.H. 504 [12 Am.Rep. 147]; see *Franklin* v. *United States,* 101 F.2d 459; 128 A.L.R. 1195.) The destruction or damaging of property is sufficiently connected with ''public use'' as required by the Constitution, if the injury is a result of dangers inherent in the construction of the public improvement as distinguished from dangers arising from the negligent operation of the improvement. The construction of the public improvement is a deliberate action of the state or its agency in furtherance of public purposes. In erecting a structure that is inherently dangerous to private property, the state or its agency undertakes by virtue of the constitutional provision to compensate property owners for injury to their property arising from the inherent dangers of the public improvement or originating ''from the wrongful plan or character of the work.'' (*Perkins* v. *Blauth,* 163 Cal. 782, 789 [127 P. 50]; *Kaufman* v. *Tomich,* 208 Cal.◦19, 25 [280 P. 130]; *Powers Farms* v. *Consolidated Irr. Dist., supra,* p. 127; *Reardon* v. *San Francisco,* 66 Cal. 492, 505 [6 P. 317, 56 Am.Rep. 109].) This liability is independent of intention or negligence on the part of the governmental agency. (*Reardon* v. *San Francisco, supra,* at p. 505; *Tormey* v. *Anderson-Cottonwood Irr. Dist.,* 53 Cal.App. 559 [200 P. 814], opinion of Supreme Court denying a hearing, p. 568; *Powers Farms* v. *Consolidated Irr. Dist., supra,* p. 126; *Mitchell* v. *City of Santa Barbara,* 48 Cal.App.2d 568, 572 [120 P.2d 131]; *Morrison* v. *Clackamas County,* 141 Ore. 564 [18 P.2d 814]; *Hooker* v. *Farmers' Irr. Dist.,* 272 F. 600; see 10 Cal.Jur. 337; 69 A.L.R. 1231.) The decisive consider-

ation is the effect of the public improvement on the property and whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking. It is irrelevant whether or not the injury to the property is accompanied by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property, but the loss to the owner. (*Rose* v. *State of California,* 19 Cal.2d 713, 737 [123 P.2d 505]; *City of Stockton* v. *Vote,* 76 Cal.App. 369, 404 [244 P. 609]; *Santa Ana* v. *Harlin,* 99 Cal. 538, 542 [34 P. 224]; *City of Redding* v. *Diestelhorst,* 15 Cal.App.2d 184, 193 [59 P.2d 177]; *City of Pasadena* v. *Union Trust Co.,* 138 Cal.App. 21, 25 [31 P.2d 463]; *Temescal Water Co,* v. *Marvin,* 121 Cal.App. 512, 521 [9 P.2d 335]; see 18 Am.Jur., Eminent Domain § 240 et seq.) Defendant, therefore, cannot rely on the fact that the injury to the property was caused, not by a deliberate appropriation thereof, but by a collapse of defendant's structures. It is of no avail to defendant that the invasion of plaintiff's property in the manner in which it happened was not foreseeable. The provision in article I, section 14, that the compensation for the taking or damaging of property shall be paid in advance protects the interests of the property-owner where advance payment is feasible under the circumstances; liability is not avoided simply because such payment is not feasible. The public purpose was not the mere construction of the improvement but the protection that it would afford against floods. The dangers inherent in the improvement would cause injury only when storms put the flood control system to a test. The injury sustained by plaintiff was therefore not too remote.

According to the complaint the injury to plaintiff's land was caused by direct invasion thereof by water bursting through defendant's levees. Compensation for that injury is called for under article I, section 14, if the flood waters would not have injured her property but for the directing of the water out of its channel onto the plaintiff's property because of the defectiveness of the levees. By allowing the water to leave its channel and to burst onto the plaintiff's land, the levees diverted the water out of its natural channel. Barring situations of immediate emergency, neither the property law nor the police power of the state entitles a governmental agency to divert water out of its natural channel onto

private property. (*Larrabee* v. *Cloverdale,* 131 Cal. 96, 98 [63 P. 143]; *Los Angeles Cem. Assn.* v. *Los Angeles,* 103 Cal. 461, 467 [37 P. 375]; *Conniff* v. *San Francisco, supra,* at p. 49, see 7 So.Cal.L.Rev. 295.)

Edmonds, J., concurred.

CARTER, J.—I concur in the judgment of reversal but I do not agree with that portion of the majority opinion which attempts to distinguish this case from the cases of *Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1]; and *O'Hara* v. *Los Angeles County Flood Control Dist.,* 19 Cal.2d 61 [119 P.2d 23]. These last mentioned cases are not distinguishable from the case at bar, and in my opinion, the only sound basis upon which the case at bar can be reversed is that stated in my dissenting opinions in the above cited cases. In these dissenting opinions I pointed out the patent fallacy of the theory upon which the majority opinions in those cases was based, and Mr. Justice Curtis concurred in those dissenting opinions. My opinion in regard to those cases has not changed because the views expressed in my dissenting opinions therein were and are absolutely sound. It now appears that a majority of this court are not satisfied with the conclusion reached in the majority opinions in the Archer and O'Hara cases, but instead of overruling these cases, they have attempted to distinguish them from the case at bar. I do not approve of this practice as it merely adds to the confusion which already exists. However, by limiting the application of the doctrine announced in those cases, the majority opinion in the case at bar has taken a commendable step, and I trust that the time will come in the not distant future when a majority of this court will have the wisdom, foresight and courage to take the further step and expressly overrule the Archer and O'Hara cases and thus remove the injustice and confusion which those decisions have brought to the law of this state.